### W. C. Logan v. J. W. Curry and R. F. Arnold.

No. 1092. Decided June 27, 1902.

**1.—Purchaser of School Land—Occupancy—Certificate of Commissioner—Adverse Claimant.**

The title of one taking by assignment the rights of an applicant to purchase school land as an actual settler, can not be assailed by an adverse applicant on the ground that the assignor was not such actual settler, after, having substituted his own obligation for that of his vendor, he makes proof of their united occupancy of the land for three years, and receives a certificate of that fact from the Commissioner, under article 4218j of the Revised Statutes. (Pp. 666-670.)

**2.—Same—Statute Construed.**

The duties of the Commissioner of the General Land Office in passing on affidavits of three years' residence on school land by a purchaser and issuing certificate of the fact (Revised Statutes, article 4218j) are not merely clerical; he is invested with discretion in determining the facts, and his certificate is conclusive of the rights of the settler as against a subsequent adverse applicant to purchase. (Pp. 667-669.)

**3.—Same—Purchase in Collusion.**

The title of an applicant for the purchase of school land, to whom the right has been awarded by the Commissioner, can not be attacked by a subsequent applicant to purchase it on the ground that the application of the first purchaser was made in collusion with another person. (Pp. 670, 671.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Nolan County.

Curry and Arnold sued and obtained judgment against Logan, who appealed, and on its affirmance obtained writ of error.

*Beall & Beall, Capps & Cantey,* and *Theodore Mack,* for plaintiff in ·error.—Did Logan, an actual settler on section 38, having filed his proper application, obligation, and affidavit in the General Land Office, and having on May 10, 1899, tendered his first payment to the State Treasurer, acquire title to the land, even though the trial court found that he was acting in collusion with another, which finding was ratified by the appellate court? We insist that the only essential by the law itself to the right of purchase is actual settlement. Weatherford v. McFadden, 51 S. W. Rep., 548. That one who is such actual settler, and thereafter complies with the statutory conditions, such as making affidavit, application, and executing obligation and tendering cash payment, must be held to have good title. Rev. Stats., arts. 4218c, 4218f, 4218j; Coates v. Bush, 56 S. W. Rep., 617; Willoughby v. Townsend, 93 Texas, 80; Metzler v. Johnson, 1 Texas Civ. App., 137; Hitson v. Glasscock, 2 Texas Civ. App., 617; Eastin v. Ferguson, 4 Texas Civ. App., 643; Nobles v. Cattle Co., 69 Texas, 434; Ramsey v. Medlin, 55 Texas, 248; Snyder v. Nunn, 66 Texas, 260; Martin v. McCarthy, 10 S. W. Rep., 221; Schwartz v. McCall, 57 S. W. Rep., 31; Gray v. Thompson, 5 Texas Civ. App., 32; Chancey v. State, 84 Texas, 529; Bacon v. State, 2 Texas Civ. App., 692; Smith v. Walton, 82 Texas, 547; State v. Snyder, 66 Texas, 687; Taylor v. Heirs of Lewelyn, 79 Texas, 96; Rogers v. Cattle Co., 90 Texas, 561; Perez v. Canales, 7 S. W. Rep., 507; Jumbo Cattle Co. v. Bacon, 79 Texas, 5.

The certificate of occupancy issued by the Commissioner in March, 1900, could not be collaterally assailed. If, as we contend, Logan as an actual settler applied for the land in May, 1899, then the action in awarding him a certificate of occupancy was a judicial act, or one at least involving discretion on the part of the Land Commissioner and binding upon all persons save the State, and particularly binding upon all persons who applied to purchase after the issuance of the certificate. Pardue v. White, 50 S. W. Rep., 591; De Court v. Sproul, 66 Texas, 368; Boon v. Hunter, 62 Texas, 587; Martin v. Brown, 62 Texas, 467.

*Browning & Madden* also filed argument, with citation of authorities, for plaintiff in error.

*A. H. & E. N. Kirby,* for defendant in error Curry.—Proof of occupancy by affidavits which are false can not validate a title to school land which has never had any validity, and a void sale of school land, unless validated by the State, remains void and no act of the purchaser can give it validity. Gracey v. Hendrix, 51 S. W. Rep., 847; Willoughby v. Townsend, 53 S. W. Rep., 581; Metzler v. Johnson, 1 Texas Civ. App., 137.

If the State alone can attack collusive purchases, then the requirement

of the affidavit as to noncollusion is a dead letter upon the statute books.
for all practical purposes, as well as the requirements that the purchaser
shall be a settler on the land, and the limitation as to the quantity of
land which may be bought by one person.

*J. M. Wagstaff,* for defendant in error Arnold.—Before plaintiff in
error Logan is entitled to purchase additional land to section 38 he must
be a bona fide purchaser of said section. This is a condition precedent to
his rights to purchase section 50. The trial court and the Court of Civil
Appeals found that Logan was not a bona fide purchaser of section 38;
in fact the record shows, and both courts find, that Logan purchased sec-
tion 38 in collusion with others, and for the benefit of others, and while
the purchase and title of section 38 may have been in his name, it was in
reality and in fact the land of another. A different question presents it-
self when plaintiff in error attempts to purchase section 50 to the ques-
tion as to whether or not Curry has a right to attack the title of section
38. It is not the policy or intent of the law that one not an owner of
land, and one not a bona fide purchaser of school land, should have the
right to purchase additional lands. It may be the law that Curry can
not attack the purchase by Logan of section 38, but it necessarily follows,
that if Logan purchased section 38 through fraud as found by the court,
that he had no right to purchase other lands with section 38 as his
basic section.

GAINES, Chief Justice.—The defendants in error each brought a
separate suit against plaintiff in error for the recovery of a separate sec-
tion of school land—Curry for section 38 and Arnold for section 50.
Presumably for the reason that the two actions involved the same issues.
of law and fact, by agreement of parties they were consolidated and tried
as one. The trial, which was without a jury, resulted in a judgment for
each of the plaintiffs, which judgment, upon appeal, was affirmed by the
Court of Civil Appeals.

From the conclusions upon the evidence, as found by the trial court,.
and as approved by the Court of Civil Appeals, we deduce the following
facts:

1. In January, 1896, one H. C. Reid made application to purchase
section 38, and his application was approved and accepted by the Com-
missioner of the General Land Office. On October 13, 1897, Reid and
wife sold the section to Logan, the defendant in the trial court; and
Logan substituted in the Land Office his obligations for those of his.
vendor. On May 9, 1899, Logan made an original application to pur-
chase, which was rejected by the Commissioner. On the 30th day of
March, 1900, he made proof of occupancy by Reid and himself for the
term of three years, and on the same day the Commissioner issued to him
a certificate of the fact.

2. On the 5th day of October, 1900, Curry, one of the plaintiffs below,
being an actual settler upon a half section which was within a radius of

five miles of section 38, made application to purchase the latter. This application was rejected by the Commissioner because of the previous sale. So much for the case between Logan and Curry.

3. On the 30th day of March, 1900, Logan, claiming to be an actual settler upon and a purchaser of section 38, made application to purchase, as additional lands, section 50, which latter section lies within a radius of five miles of the former. Another application of like character was made by Logan on March 31st, and the land was awarded to him May 24, 1900. On May 25, 1900, Arnold, one of the plaintiffs in the trial court, also filed his application to purchase section 50 as additional lands to his home section, and his application was rejected because of the sale to Logan. The several applications of each of the parties were in due form and were accompanied by the affidavits, tender of purchase money, and the obligations required by the statute.

4. In derogation of Logan's title, it was claimed by the plaintiff in the trial court that Reid was not in fact an actual settler upon section 38, and that Logan's applications to purchase that section and section 50 were each made in collusion with another. Upon both of these issues the court found in favor of the plaintiffs; that is to say, that Reid was not an actual settler, and that Logan's applications were collusive. On the other hand, it was contended, on the trial, in behalf of Logan, that neither Curry nor Arnold was an actual settler on his home section: but the court also found against Logan on these issues.

It is apparent from the foregoing statement that Logan has the better title to each of the sections of land in controversy, unless the fact that Reid was not an actual settler, or that Logan, in applying to purchase, acted in collusion with another party, defeats his right.

As to the first question, we are of the opinion that the fact that Reid was not an actual settler does not, under the facts of this case, affect in any manner Logan's title. Under the statute in force at the time Reid made his application to purchase, and at the time he made his proof of occupancy, it is provided that: "When any portion of said land has been classified to the satisfaction of the Commissioner under the provisions of this chapter, or former laws, such lands shall be subject to sale, but to actual settlers only," etc. Now it may be that since the statute provides in very distinct terms that the sale of the school lands shall be to actual settlers only, and since it is made the duty of the Commissioner to accept an application for the purchase of lands, when accompanied by the affidavit that the applicant is an actual settler, the cash installment of the purchase money and the requisite obligations for the deferred payments, and that since no express authority is given him to reject an application which complies in form with the requisites of the statute, his action in accepting the application of one who is not a settler in fact, is not conclusive, and may be attacked by anyone who may make an actual settlement upon the land and make a lawful application. That question is not necessarily involved in this case. Here, as we have seen, before Curry made application to purchase section 38, Logan had made

proof of the three years occupancy by his vendor and himself, and the Commissioner had issued him a certificate of the fact. With reference to that matter, article 4218j of the Revised Statutes provides that "All sales shall be made by the Commissioner of the General Land Office, or under his direction, and he shall prescribe suitable regulations whereby all purchasers shall be required to reside upon as a home the land purchased by them for three consecutive years next succeeding the date of their purchase, except when otherwise provided. Such regulations shall require the purchaser to reside upon the land for three consecutive years herein mentioned, and to make proper proof of such residence and occupancy to the Commissioner of the General Land Office within two years next after the expiration of said three years, by his affidavit, corroborated by the affidavits of three disinterested and credible persons, to be certified by some officer authorized to administer oaths, and on making such proof the Commissioner shall issue to the purchaser, his heirs and assigns, a certificate showing that fact," etc. The questions are, what was the purpose of this provision? What authority did it confer upon the Commissioner? Was it made his duty merely to perform the functions of a clerk by receiving and filing the affidavits prescribed by the statute, and to issue a certificate of the fact that they had been filed, or was he empowered to inquire into the matter of occupancy, and to issue or refuse the certificate according to his determination of the question whether the law which required a continual residence and occupancy for three years had been complied with or not? Article 2436 of the Revised Statutes makes it the duty of the Commissioner of the General Land Office "to furnish any person who may apply for the same with the copy of any paper, document or record" in his office, and also "to give certificates * * * certifying to any fact or facts contained in the papers, documents or records" of his office, "to any person applying for the same." This has been the law ever since 1848. Therefore, if the duty of the Commissioner is merely to accept and file the affidavits, why should the Legislature prescribe in article 4218j that when the affidavits were filed he should issue "a certificate showing the fact." This duty was already required of him under the existing law. Again we ask the question, if the Commissioner was to have no power to determine the question of occupancy, what good was the filing of the affidavits to subserve? It may be answered that the purpose was to require evidence of the continued residence of the purchaser for three years, as a prerequisite to his paying the balance of the purchase money and taking out a patent for the land, should he desire to do so. But it is not only as a prerequisite to the taking out of a patent that a purchaser is required by the statute to make proof of occupancy. Every purchaser, as a condition subsequent to his title, must, within two years after the lapse of three years from the time of his purchase, or that of his vendor, make such proof. He can only obtain a patent by paying in full the balance of the purchase money, and at the time he is required to make the proof he has the option of paying in equal annual installments to run for a period at least of thirty-five years,

and it may be of thirty-seven years. It would seem, therefore, that the main purpose of the requirement was to set at rest the question of actual settlement, and to establish the purchaser's right to the land, subject only to the condition that he pay the unpaid installments of purchase money and interest thereon, as required by the statute.

Conceding that it was the intention of the Legislature to leave the title of a purchaser open in its inception to attack by an adverse claimant upon the ground that he was not an actual settler at the time of his application to purchase, or had abandoned the land subsequently thereto, sound policy would dictate that some limit should be fixed to this period of uncertainty: and we are of the opinion that three years would be a reasonable and sufficient time in which to permit the question to be contested. It is unreasonable to suppose that the Legislature intended that the question should never be settled. It is true that after the proof of occupancy the purchaser is entitled, upon payment of the purchase money in full, to receive a patent. But we understand the law to be that a patent is conclusive only against irregularities, and that, as a rule, it is permissible to go behind it and to show that the patentee was not one of those to whom the Commissioner was authorized to issue the grant, unless the right has been determined in the favor of such person, by him or some other officer or board invested with authority to pass upon the question of occupancy when the final proof should be made. Did the Legislature intend to make a law which would leave the titles of the purchasers of its school land in such uncertain condition, or was it the purpose to fix a time at which, and provide a method by which the question of actual settlement could be set at rest? It is true the language of article 4218j, as hereinbefore quoted, reads very much as if it was intended to make it the duty of the Commissioner to issue the certificate upon the filing of the affidavits therein required. But such is not the necessary construction. He is doubtless authorized to act upon the affidavits and to issue the certificate. But the affidavit of "three disinterested and credible persons" is required; and we are of the opinion, he is authorized to pass upon the question of the interest and credibility of the witnesses. It is not clear what is meant by the words "to be certified by some officer authorized to administer oaths." Does it mean that the officer is to certify merely to the fact that the affidavits have been made before him, or that the corroborating affiants are "disinterested and credible persons?" Probably the latter is the correct construction. But, if so, there are no words in the statute which, either expressly or by the necessary implication, make the certificate conclusive of the fact. While, as we have said, the Commissioner may act, and in the great majority of cases should act, upon the statutory proof and certificates, we see no good reason why, if facts were brought to his knowledge which should throw a doubt upon the disinterestedness or credibility of the witnesses, he should not inquire into the matter and refuse his certificate, if satisfied that the land had not been resided upon for the period required by the law. If the certificate be refused, then the title of the purchaser would be open to

attack by anyone who should settle upon and make application to purchase the land; but if issued, it would be conclusive, except, possibly, against the State. This construction is consistent with the language of the statute, and since, in our opinion, the contrary construction would be fraught with strife and would conduce to endless litigation, we think it ought to prevail. When the meaning of a written law is involved in a reasonable doubt, that construction should be given which best comports with a sound public policy.

In the case of Pardue v. White, 50 Southwestern Reporter, 591, the Court of Civil Appeals for the Second District, in an able opinion by Mr. Justice Hunter, held in accordance with the views here expressed, and we refused a writ of error in that case. In the present case, that court still adheres to the former opinion upon that question; but affirmed the judgment against the plaintiff in error, Logan, for the reason that his purchases were made in collusion with another person. This brings us to the question, whether the title of a purchaser to school land is subject to be assailed by an adverse claimant upon the ground that in making his purchase he acted in collusion with some other person? We are of the opinion that the question should be answered in the negative. What we have said in regard to the impolicy of permitting the titles of these purchasers to be assailed by showing that they were not in fact settlers, applies with equal force to the question of permitting the attack upon the ground of collusion. Therefore we think that such should not be deemed the intention of the Legislature, unless the language of the act requires that construction. Clearly such construction is not required by the express words in the statute. But it is argued that by reason of the fact that the words "bona fide purchaser" are used, one who was acting in collusion with another is not authorized to purchase, and the Commissioner is without power to sell to him. But such is not the necessary meaning of the words. Doubtless it was intended that one who was acting in the interest of another, either in whole or in part, should not purchase, and clearly to guard against such sale, the applicant was required to make oath that he was not buying the land for any other person or corporation. We are of the opinion that this was the only safeguard the Legislature intended to provide, and that when the affidavit was made this concluded the question of good faith as to the matter of collusion; and that they deemed the appeal to the conscience of the purchaser, and the penalties for perjury, a sufficient sanction to secure the enforcement of the provision. Our holding that the certificate of the Commissioner as to the proof of occupancy concludes the question of actual settlement, supports our conclusion upon this point. As to that matter, there is a time fixed by the statute in which the question may be finally determined. There is no such provision with reference to the question of collusion. So that if we should hold that the title of a purchaser was subject to be assailed on this ground, we should be constrained to hold further that it remained open to such attack at least until the patent should issue. In case of a purchaser who should avail himself of his option to pay in an-

nual installments, this could not be until the end of forty years. We can not bring our minds to the conclusion that the Legislature intended so improvident a provision.

We think the judgment of the District Court and that of the Court of Civil Appeals should be reversed, and that judgment should be here rendered for the plaintiff in error, and it is accordingly so ordered.

*Reversed and rendered for plaintiff in error.*