## DE SHAZO et al. v. EUBANK.
### (No. 141–3070.)

(Commission of Appeals of Texas, Section A. June 23, 1920.)

1. **Public lands** ⊜≈174—**Certificate of occupancy issued by land commissioner cannot be collaterally attacked.**

Where one owning lots in a county applied to purchase school lands as additional land, and after proof of occupancy the land commissioner issued a certificate, such certificate is not open to collateral attack on the ground that the lots were not private land, within the statute allowing the acquisition of additional land, for the commissioner is required to determine the sufficiency of the proof of occupancy, and as the statute relating to the acquisition of school land provides for payment over a long term of years, it is essential that on issuance of a certificate after proof of occupancy the title cannot be collaterally attacked.

2. **Public lands** ⊜≈173(5) — **School lands held within statute forbidding surveyor to acquire "public land."**

Within Pen. Code 1911, art. 164 making it a misdemeanor for a county surveyor to acquire "public land," school lands are "public land," though not part of the unappropriated domain; for, while the term "public land" varies in statutes, it should be given such construction as will effectuate the intent of the Legislature.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Land.]

3. **Public lands** ⊜≈173(3)—**Purchaser of school lands complying with requirements has inchoate right.**

A purchaser of school lands who has complied with the conditions as to occupancy and filed an affidavit thereof within proper time acquires an inchoate right to the land, which can be perfected by compliance with the further re-

quirements of the statute, and this right is subject to sale or transfer.

4. **Public lands** ⊜≈173(11)—**Compliance with requirements held not to divest state of title to school lands.**

While a purchaser, on complying with the requirements of the statute as to occupancy of school lands and the filing of an affidavit thereof, acquires an inchoate right subject to sale or transfer, the state is not completely divested of title until all conditions of the purchase are fully complied with, and the right of the purchaser is subject to forfeiture for failure to make payment as required, etc.

5. **Public lands** ⊜≈173(5) — **School lands are "public land" as to county surveyor, though certificate of occupancy has been granted.**

Under Pen. Code 1911, art. 164, making it a misdemeanor for any county surveyor to be directly or indirectly concerned in the purchase of any "public land," the term is not limited to the unappropriated public domain, but includes school lands, and, as the issuance of a certificate of occupancy does not completely divest the state of its title, the county surveyor is incompetent to acquire the right or interest of an occupant who has not received a certificate but a patent.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by J. W. Eubank against Maria De Shazo and others, in which defendants filed a cross-action. Judgment for plaintiff was affirmed on defendant's appeal by the Court of Civil Appeals (191 S. W. 369), and defendants bring error. Judgment of Court of Civil Appeals reversed, and judgment rendered that plaintiff take nothing.

W. F. Hendrix and M. W. Stanton, both of El Paso, for plaintiffs in error.

Nealon & Dorman, of El Paso, for defendant in error.

SONFIELD, P. J. The following is the statement of the case by the Court of Civil Appeals:

"Eubank filed this suit January 22, 1915, against Maria, Donald, and Kenneth De Shazo, to remove cloud from title to survey No. 218, S. F. No. 7088, H. M. Mundy, grantee, containing 160 acres, situate in El Paso county. Defendants pleaded not guilty, and filed a cross-action asserting title in themselves. Upon trial before a jury a peremptory instruction was given in plaintiff's favor, in accordance wherewith verdict was returned and judgment rendered.

"On May 5, 1908, the land in controversy was public free school land, and by application of that date, filed in the general land office May 18, 1908, E. L. De Shazo applied to purchase the same as additional to private land. Upon this application the land was awarded September 12, 1908. By quitclaim deed dated January 17, 1912, filed for record April 7, 1913, E. L. De Shazo, for a recited consideration of $250, conveyed all of his right, title, and interest in the

land to Eubank. On June 20, 1912, De Shazo made his proof of occupancy and improvements, and filed same in the general land office on June 22, 1912, and on June 24, 1912, certificate of occupancy was issued and sent to De Shazo by the land commissioner. On December 18, 1913, De Shazo died intestate, leaving as his heirs the defendants herein, namely, his wife, Maria, and two children, Donald and Kenneth. On May 8, 1913, the land was patented by the state to E. L. De Shazo, his heirs and assigns. At the time he applied to purchase the land De Shazo owned and resided upon lots 1, 2, and 3 in block 21 in Grandview, an addition to and part of the city of El Paso. Grandview is a part of the Salazar grant, and is laid off into streets, lots and blocks. The addition is not within the corporate limits of the city of 'El Paso. The three lots had a 75-foot front. De Shazo continued to reside there until the date of his death. This was his home tract and the private land referred to in his application to the state to purchase the land in controversy. Upon the dates above mentioned and long prior thereto, Eubank was county surveyor of El Paso county."

On appeal, the Court of Civil Appeals affirmed the judgment of the district court. 191 S. W. 369.

It is contended by defendants: (1) That the lots in Grandview addition upon which De Shazo's home was situate, and where he resided during the required three years' occupancy, were not "private land," within the meaning of the law relating to the sale of school land, and that his ownership thereof and residence thereon did not authorize the purchase of school land as additional thereto; (2) at the date of the deed from De Shazo to plaintiff, though De Shazo had complied with the conditions of occupancy and improvement, he had not yet filed the proof thereof, and no certificate of occupancy or patent had issued; that the land was therefore "public land," title to which could not be acquired by plaintiff, then county surveyor, in view of article 164, Penal Code, making it a misdemeanor for any county surveyor to be directly or indirectly concerned in the purchase of any right or interest in any public lands in his own name, or in the name of any other person. The Committee of Judges to whom the application was referred, being inclined to the view that De Shazo was not authorized to purchase the school land in controversy, granted the writ.

[1] The Court of Civil Appeals declined to pass upon the status of the Grandview lots as a proper home tract authorizing the purchase of school land as additional thereto. That court held, in effect, that the commissioner, being vested with the power to make a sale and award of the land to a qualified purchaser, having determined that De Shazo was such a purchaser, as the owner of and settler upon the Grandview lots, and having actually made the sale and

222 S.W.—62

award, and De Shazo having complied with all the terms and conditions of his purchase, and the certificate of occupancy having issued, the sale and award cannot be regarded as a nullity and subject to collateral attack. In this conclusion we concur.

In the disposition of public school lands, it is the policy of the state to sell to actual settlers and to require actual occupancy of the land so sold. One owning other or private land is authorized to purchase school land within a certain radius as "additional land," and the occupancy of the home tract for the requisite period is regarded as an occupancy of such additional land—a constructive occupancy. To entitle one to purchase additional land, his "other" or "private land" must be of the kind aind character contemplated by the statute. The actual settler upon the school land proper must make proof of occupancy thereof; where the occupancy is constructive, he must make proof of occupancy of the basic tract.

Upon the filing of proof of occupancy, a certificate thereof is issued by the land commissioner. The issuance of the certificate is not merely ministerial, the commissioner being vested with discretion in determining the facts. If satisfied that the proof of occupancy is false, or the occupancy insufficient, not in compliance with the statute, he can refuse the certificate.

"If the certificate be refused, then the title of the purchaser would be open to attack by any one who should settle upon and make application to purchase the land; but if issued it would be conclusive, except, possibly, against the state." Logan v. Curry, 95 Tex. 664, 69 S. W. 129; Mitchell v. Robison, 103 Tex. 641, 132 S. W. 465.

The matter of the sale of the land in controversy was within the jurisdiction of the land commissioner. The duty devolved upon him, before issuing the certificate of occupancy, to determine whether De Shazo owned, settled upon, and occupied for the required time other or private land of the character entitling him to purchase. This was involved in determining De Shazo's compliance with the conditions of settlement and occupancy. If the certificate of the land commissioner does not evidence an adjudication of these facts, but merely an occupancy of the basic tract, it is meaningless. The basic tract being private land owned by De Shazo, the state is concerned in its occupancy only as such occupancy affected his right to the additional land.

A purchaser of school land must, within two years after the completion of the three-year period of occupancy, make proof thereof. Patent cannot issue until the filing of such proof and the payment in full of the purchase money. When proof of occupancy has been filed, the purchaser can pay the balance of the purchase money and demand

a patent, or he can pay the same in annual installments running for a period of at least 35 and up to 37 years. It is to the interest of the state, as well as of the purchasers of the school land, that the titles of such purchasers be established, at least to the extent of being invulnerable to collateral attack, at some time prior to the issuance of the patent. To permit such attacks through all the years, where the purchaser exercises his option of payment of the purchase money in annual installments, would be promotive of continuous litigation and strife. The evident intention of the Legislature in requiring proof of occupancy and the issuance of the certificate was, in the language of the court in Logan v. Curry, supra:

"To set at rest the question of actual settlement, and to establish the purchaser's right to the land, subject only to the condition that he pay the unpaid · installments of purchase money and interest thereon, as required by the statute."

The purpose of the proof and certificate, when the school land itself is occupied, is to establish and evidence title to the land so occupied. Where the occupancy is of the basic tract, the purpose is to establish and evidence the purchaser's title to the additional land. In each case the certificate has the same conclusive effect.

[2-5] Was the land at the date of the purchase by plaintiff from De Shazo "public land" within the purview of article 164 of the Penal Code? The term "public land," as used in various statutes, is generally held to comprise all of the unappropriated public domain—such of the lands belonging to the state as are subject to sale or other disposal. Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S. W. 865. The sense in which the term is used may vary somewhat in the different statutes, and it should be given such meaning as will effectuate the intention of the Legislature in its use. Thus, in Cotulla v. Laxson, 60 Tex. 443, it is held that the term "public land," as used in article 164 of the Penal Code, is not limited in its signification to unappropriated public domain, but also includes public school lands. With reference to this, the court says:

"These public school lands were set apart for a public purpose, devoted to the promotion of public education. The act of appropriation, or, rather, the dedication of these lands to that purpose, did not work a change in their ownership; true they were not thereafter unappropriated public domain, but as ever belonged to the public."

The purchaser of school land who has complied with the condition of settlement, and within the proper time filed his affidavit thereof, acquires an inchoate right to the land, which can be perfected by compliance with the further requirements of the statute. Canales v. Perez, 65 Tex. 291. The right so acquired is, by the express terms of the statute, subject to sale or transfer by the purchaser. Upon the completion of the required term of occupancy, the land becomes the private land of the purchaser to the extent that liens created thereon by him can be foreclosed and the land subjected to sale on execution. But the right or title of the purchaser is not then complete; it is subject to forfeiture for failure to make proof of occupancy within the specified time, or ·to pay the annual interest or installments of principal of the purchase money. The state is not completely divested of title until all the conditions of purchase are fully complied with. As said by the court in Williams v. Finley, 99 Tex. 468, 474, 90 S. W. 1087, 1090:

"The title remains in the state and the purchaser has only the right to acquire it by continued compliance with the conditions prescribed by the statute."

De Shazo, at the date of his conveyance to plaintiff, had not acquired the title of the state. He conveyed to plaintiff the right to acquire it by continued compliance with the statutory requirements. Whatever may have been the status of his title as to others, it is clear that, in so far as plaintiff was concerned, the land conveyed was public land, within the meaning of the article under consideration.

We are convinced that, in order to effectuate the intention of the Legislature in the use of the term "public land" in the connection in which it is used, the term should be construed to embrace public school lands in which the state has any character of title; such lands not losing the character of "public land" until there is a full and complete divestiture of the state's title.

The legislative intent in the enactment of article 164 of the Penal Code is not difficult of ascertainment. Such intention was declared in the early cases by our Supreme Court. A sound public policy requires that officers charged with duties pertaining to the public lands should not be permitted to avail themselves of information acquired through their official positions to speculate in such lands, to the detriment and disadvantage of other citizens and of the public at large. Such officers are in the nature of trustees, and, to insure against an abuse of the trust reposed in them, it is essential that they be forbidden to acquire, directly or indirectly, in their own name or in the name of another, any interest in such lands. Wills v. Abbey, 27 Tex. 202; Cotulla v. Laxson, supra; State v. Thompson, 64 Tex. 690.

As before stated, the purchase by De Shazo was subject to forfeiture. In the event of forfeiture, the land would revert and become again a part of the public domain, subject to sale and award to applicants. In such case the county surveyor would have certain duties to perform in reference thereto. It is evident that a purchase by such officer of the title of a purchaser subject to forfeiture might involve a conflict between his rights under the purchase and his duty to the state.

Inasmuch as plaintiff was incompetent, under the terms of the statute, to purchase from De Shazo, the patent issued by the state to De Shazo cannot inure to plaintiff. It follows that he has failed to show title to the land in controversy.

We are of opinion that the judgment of the Court of Civil Appeals should be reversed, and judgment here rendered that plaintiff take nothing by his suit against defendants.

PHILLIPS, C. J. We approve the judgment recommended in this case.