BREWSTER COUNTY v. PRESIDIO COUNTY.

Decided November 9, 1898.

**1. Counties—No Action Against, if Unorganized.**

An unorganized county has no legal corporate existence and can not sue or be sued, although attached to an organized county for judicial purposes.

**2. Evidence—Certificate of Comptroller.**

The certificate of the Comptroller as to the value of property in a county as shown by the assessment rolls filed in his office is, by virtue of article 2308, Revised Statutes, admissible in evidence in all cases where the original would be evidence.

**3. Counties—Suits Against.**

A claim for the proportionate part of the liabilities of the old county which is to be borne by a new county formed out of it need not be presented to the commissioners court of the new county. Following Mills County v. Lampasas County, 90 Texas, 603.

**4. Same—Suit Required, When.**

Under the statute the liability of an excised part of a county, made to form a part of a new county, for its proportion of the prior indebtedness of the parent county, can be fixed and determined only by suit.

**5. Same—Limitations.**

Limitations will not run against the claim of the parent county for a proportionate share of the joint indebtedness so long as the excised territory forms part of an unorganized county.

**6. Same—Action by Parent County Lies, When and Where.**

Where territory is cut off from the parent county and formed into unorganized counties, and afterwards these are disorganized by act of the Legislature and made part of the territory of another county, the parent county may sue such other county to fix its claim upon the excised territory for its proportion of the prior indebtedness.

APPEAL from Presidio. Tried below before Hon. A. M. WALTHALL.

*Turney & Burgess,* for appellant.

*P. H. Clarke* and *Falvey & Davis,* for appellee.

FLY, ASSOCIATE JUSTICE.—The appellee in this case by its pleadings endeavored to fix the liability of appellant for certain bonded indebtedness of appellee that was outstanding in 1887, and for certain other debts, when appellant and the counties of Buchel, Foley, and Jeff Davis were created out of territory belonging to Presidio County. The demand for a pro rata of the bonded indebtedness was, however, abandoned, and at the trial nothing was sought but to fix the liability of appellant for the pro rata amounts due by Buchel and Foley counties, on floating indebtedness that accrued prior to the formation of the counties aforesaid in 1887, and which had been paid by appellee. This cause was tried by the court and the following judgment was rendered for appellee:

"On this the 31st day of March, 1898, came on to be heard the above styled and numbered cause and the plaintiff and defendant appeared and announced ready for trial. The plaintiff made known to the court that it would no longer prosecute the suit as to the bonded indebtedness and as to all other indebtedness existing March 15, 1887, and not paid by Presidio County and still unpaid and outstanding, and asked that as to said indebtedness said cause be dismissed without prejudice. It is therefore ordered and adjudged, that as to the bonded indebtedness outstanding and unpaid indebtedness mentioned in plaintiff's petition the same is dismissed from this case without prejudice. No jury having been demanded, the matters at issue as well those of fact as of law were submitted to the court, and after hearing the pleadings, the evidence, and argument of counsel, the court finds as follows:

"1. The correct total value of property assessed on the rolls of Presidio County for the year 1887 to be $2,382,050.

"2. The correct total value of property assessed on the tax rolls of Brewster County for the year 1887, $1,688,049.

"3. The correct total value of property assessed on the tax rolls of Jeff Davis County for the year 1887 to be $1,544,530.

"4 The correct total value of property assessed on the tax rolls of Buchel County assessed by the Comptroller and by Brewster County for the year 1887 to be $1,257,226.

"5. The correct total value of the property of Foley assessed on the tax rolls of said county by the Comptroller and by Brewster County for the year 1887 to be $781,459.

"6. That on the 2d day of February, A. D. 1887, and the 15th day of March, 1887, at the time the counties of Jeff Davis, Brewster, Buchel, and Foley were created out of the territory of Presidio County, there was an outstanding unpaid legal liability, indebtedness owed by Presidio County as said county existed before said date, amounting to the sum of $29,394.03.

"7. That since the said 15th day of March, 1887, the county of Presidio as the same exists since said date has alone paid and discharged of said liabilities and indebtedness the sum of $23,796.54.

"8. That the proportion of Foley County of the liabilities and legal indebtedness of Presidio County as it existed at the date of the creation

of Foley County for which Foley County is bound to pay, according to the proportionate value of the property in the excised territory of Foley County to the value of the property remaining in Presidio County, amounts to the sum of $2429.73.

"9.   That the proportion of Buchel County of the liabilities and legal indebtedness of Presidio County as it existed at the date of the creation of Buchel County for which Buchel County is bound to pay, according to the proportionate value of the property in the excised territory of Buchel County to the value of the property remaining in Presidio County, amounts to the sum of $3909.

"10.   That the following was the territory of the county of Buchel as it existed at the time of its creation in 1887: Beginning at the northeast corner of Brewster County (as it existed under the Act of February, 1887, by which said county of Brewster was created), on the Presidio and Pecos County line; thence south with the east line of Brewster County six miles; thence east to the Rio Grande River; thence down said river with its meanders to the Pecos County line; thence in a northwesterly direction along said Pecos County line to the place of beginning.

"11.   That the following was the territory of the county of Foley as it existed at the time of its creation: Beginning at the southwest corner of Brewster (as the same existed at the time of its creation by the Act of February 2, 1887); thence east along the south line of said county thirty miles to the southeast corner of said Brewster County; thence north along the east boundary line of Buchel County; thence east along the south line of Buchel County to the Rio Grande River; thence up the Rio Grande River with its meanders to a point due south of the beginning; thence north to the place of beginning.

"12.   That by the Act of the Legislature the counties of Buchel and Foley have been disorganized and the territory of said two unorganized counties included and made a part of said Brewster County.   It is therefore ordered, adjudged, and decreed by the court that said plaintiff the county of Presidio do have and recover of and from the defendant Brewster County $6338.73, with interest on said amount from this date at 6 per cent per annum, to be collected and paid by said defendant by levy of a special tax on all property in that part of the territory of defendant formerly included in the said Buchel and Foley counties, and now a part of said defendant Brewster County in the following proportions: there shall be levied and collected on all the property in the territory formerly in said county of Buchel a special tax sufficient to pay of said amount the sum of $3909.

"There shall be levied and collected on all the property in the territory formerly in said Foley County a special tax sufficient to pay the sum of $2429.73.   It is therefore further ordered, adjudged, and decreed that the Commissioners Court of said defendant Brewster County, composed of said defendant county judge and commissioners and collector of said county, levy a special tax on all the property in that part of the territory of said defendant formerly constituting Buchel County suffi-

cient to pay said sum $3909, and if the first levy be insufficient, then to make said levy annually until the amounts of $3909 is paid and satisfied. It is further ordered, adjudged, and decreed that the Commissioners Court, composed of said county judge and the commissioners of said county of said defendant Brewster County, levy and collect a special tax on all the property in that part of the territory of said defendant county formerly constituting Foley County sufficient to pay said sum of $2429.73, and if the first levy be insufficient, then to make levy annually until said amount of $2429.73 is paid and satisfied. That when said special taxes are collected by defendant the same shall be paid over to said plaintiff. The plaintiff shall recover of and from the defendant its costs in this behalf incurred."

The facts stated in the judgment are established by the record, and are adopted by this court as its conclusions of fact.

The first assignment sets up error in the action of the court in overruling appellant's plea to the jurisdiction, which claim is based on article 1194, section 19, of the Revised Statutes, and which is to the effect that "suits against any county shall be commenced in some court of competent jurisdiction within such county." It is admitted by appellant that article 764, in which it is provided that a parent county may sue a newly created county out of excised territory for its proportional share of the liabilities of the old county incurred before the new was formed, either in the old county or the new, is applicable to this case, but it is insisted that the right to sue in the parent county has been lost by reason of the fact that suits had been brought in Brewster County against that county and Buchel and Foley counties, the latter two being unorganized, and had been dismissed. It is provided, in said article 764, that its provisions "shall not apply to any county the claims against which have already been placed before courts having jurisdiction thereof and tried or dismissed under laws that were at such time constitutional." As before stated, this suit was prosecuted to recover the proportional share of the liabilities of the parent county that rested upon the territory formerly known as Buchel and Foley counties. At the time that the suits were brought against Buchel and Foley counties, they had no legal corporate existence, and were incapable of suing or being sued. It is true that they were attached to Brewster County for judicial purposes, but this was merely to provide a means for the administration of laws and the protection of the citizens in the unorganized territory, and did not authorize suits against them. There was no one upon whom citation could be lawfully served, no authority being given for having such unorganized counties cited through the officers of the county to which they were attached for judicial purposes. The statute has not made any provision for suits against an unorganized county, and in the absence of such provision we are constrained to hold that such suits can not be entertained. The suits in Brewster County against Buchel and Foley counties had no standing, and at no time from 1887 until 1897, when the two counties were made

a part of Brewster County, was there any judicial tribunal before which Presidio County could appear and present its demand for the sums due by such excised portions of its territory. It is true that Brewster County had the authority to levy and collect such taxes from the inhabitants of the unorganized counties as were necessary to pay for their proportional part of the expenses of the county and State governments, but there is no law authorizing the organized county to pass upon claims against the excised territory in favor of the parent county, or to levy taxes to pay off any such claims. As said by the Supreme Court in Cattle Company v. Faught, 69 Texas, 402: "The Legislature has almost uniformly treated an unorganized county as part of the county to which it is attached for judicial purposes, so far as the exercise of local governmental powers over it is concerned." The court enumerates the governmental powers that had been conferred by the Constitution and laws, but the right to appear and answer to a suit for the unorganized county is not one of them. It is only by a liberal construction of the statutes that the right to assess and collect taxes in the unorganized county can be obtained from our laws, and they can not be extended so as to include the assessment and collection of taxes to pay for debts incurred prior to the unorganized county being attached for judicial purposes. The Comptroller is given the authority to collect taxes from nonresidents of unorganized counties, but if there were any such in Buchel and Foley counties, it does not so appear from the record. We conclude that there was at no time, from the formation of Buchel and Foley counties in 1887, until they were made parts of Brewster County in 1897, at which Presidio County could appear before any tribunal and enforce the collection of its debt against the unorganized counties, and consequently limitation did not begin to run against such debt until such period. The certificate of the Comptroller as to the value of property in Presidio County and in the excised portions known as Buchel and Foley counties, in 1887, taken from the assessment rolls of such counties for that year, which were on file in his office, was properly admitted in evidence by virtue of article 2308, Revised Statutes. In that article it is provided: "It shall be the duty of the Secretary of State, Attorney-General, Commissioner of the General Land Office, Comptroller, Treasurer, Adjutant-General, and Commissioner of Agriculture, Insurance, Statistics, and History, to furnish any person who may apply for the same with a copy of any paper, document, or record in their respective offices, and also to give certificates, attested by the seal of their respective offices, certifying to any fact or facts contained in the papers, documents, or records of their offices, to any person applying for the same, and the same shall be received in evidence in all cases in which the originals would be evidence." The assessment rolls of the different counties are not only permitted but required to be filed in the Comptroller's office, and he was authorized to give not only copies, but a certificate of any facts contained in such rolls, and when given, the copies or the certificate of facts must be received in evidence whenever the original would

be admissible. The assessment rolls of each county are required to be made out in triplicate, and the one filed with the Comptroller is an original so far as that office is concerned, and a certified statement of the facts contained in such rolls, by the Comptroller, are legitimate evidence.

It is contended by appellant that the claim of appellee should not have been entertained because it had not been presented to and rejected by the Commissioners Court of Brewster County. This point has been conclusively settled against appellant by the Supreme Court. Mills County v. Lampasas County, 90 Texas, 603.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

#### Decided December 14, 1898.

NEILL, ASSOCIATE JUSTICE.—It is contended in this motion, by appellant's counsel, that we erred in holding that appellee's action was not barred by the statute of limitations; and also in holding that the demand sued upon had not theretofore been placed before a court having jurisdiction thereof, and dismissed under laws that were at such time constitutional. The ground upon which we based both holdings is that from the time Buchel and Foley counties were created up to the time they were abolished, and the territory which composed them incorporated into Brewster County, no action could have been brought to establish the demand sued upon against either Buchel or Foley County. Our opinion grounded on this reason was not, as the motion would imply, hastily formed, but reached after giving the facts of the case, the statutes, and opinions of the Supreme Court deemed applicable by us, careful, patient, and mature consideration, and we thought we had plenty of time, and had given to it a mature consideration of the questions involved in this case. With no other purpose in view than to correct our former opinion, if it should be by us deemed erroneous, we have, with the assistance of the argument of counsel, embodied in this motion, again thoroughly considered the questions involved, and have found no reason for changing our opinion as formerly expressed upon any of them. Was it necessary, after Buchel and Foley counties were created, for Presidio County to bring an action to establish the demand sued upon, and, if necessary, against whom should such an action have been brought? In Mills County v. Lampasas County, 90 Texas, 607, Chief Justice Gaines, in construing the statute of 1893, Revised Statutes 1895, articles 764, 765, says: "It may seem, upon first blush, that it is unreasonable to presume that the Legislature intended to provide a suit as the only means of fixing the liability in such a case, and that such a proceeding would have been prescribed only in the event of a failure of an attempt at an amicable adjustment. The argument would not have been without force if the claim were one against the county. But the county has officers and agents of

its own selection, who may represent its interests. Not so with a mere part of the county. The majority of such voters in such part might not control the election of any member of the commissioners court, and hence the Legislature may have considered it unjust to confide to a body, not of their own selection, the power by an agreement with the parent county to fix upon them the liability. The Legislature may, with good reason, have considered a direct suit as the safest method by which the matter could be adjusted, and liability fixed, with justice to all parties." From this it is clear that where a part of a county is composed of territory excised from another county it is necessary for the parent county to bring a suit to establish its demand against the excised territory for its pro rata share of the indebtedness existing against the county at the time it was cut off from the county from which it was taken. The reason given for this applies with equal force to a county such as Buchel or Foley, created wholly from the territory of one county, and, while unorganized, attached to another for judicial purposes. Such unorganized county has no officers or agents of its own selection who may represent its interests. The majority of its voters may not control the election of any member of the commissioners court, and the Legislature may have considered it equally unjust to confide to a body not of its own selection the power by an agreement with the parent county to fix upon it a liability; and may with good reason, have considered a direct suit as the safest method by which the matter could be adjusted, and the liability fixed, with justice to all parties. To us it seems clear from the opinion referred to of the Supreme Court that it was necessary for Presidio County to bring suit to establish its demand against Buchel and Foley. When that opinion was delivered, sections 3 and 4 of the Act of April 3, 1889, were, as they are now, in full force, for they were carried into the Revised Statutes of 1895, and are there articles 766 and 767. These sections only enjoin upon the Comptroller and the Commissioners Court of Brewster County the levy and collection of a tax on property in the territory composing the unorganized counties of Buchel and Foley, to pay the pro rata share of the debt due by such unorganized counties to Presidio County, after their liability for such debt is established. But the Act of 1889 nowhere prescribes how such liability shall be established. If it was not necessary to establish this liability by suit, why did the Legislature, in the Act of 1893, provide for the venue of such a suit, and prescribe what evidence should be conclusive of the property and value thereof remaining in the parent county, and the excised territory at the date of the creation of such new county? To our minds, justice requires that the demand should be established in this manner. If a suit is not necessary, the unorganized counties would be at the mercy of the parent county. Taxes for debts which did not exist, were illegal, or had been discharged by payment might be assessed against them, and, not being entitled to a day in court, they would have no redress for such wrongs.

Having found that it was necessary for Presidio County to bring

action to establish its demand against Buchel and Foley counties, the next question is against whom should it have brought such action. One against whom a debt is sought to be established is ordinarily a necessary party to a suit for its establishment, and, if he has no representatives authorized to appear and defend such suit, he is a necessary party before judgment can be obtained. The law did not, while Buchel and Foley counties were unorganized, and attached to Brewster, give the last named county authority to appear and defend a suit brought against either of such unorganized counties. Nor was any one given authority to represent them in such a suit. Therefore it seems clear to us that to fix such demand by judgment the suit therefor would necessarily have to be brought against Buchel and Foley counties. But they were unorganized, and were therefore not bodies corporate, invested with rights and powers, and charged with responsibilities and duties, and had no legal existence (Reeves County v. Pecos County, 69 Texas, 178), and could not be sued. Neither county having ever organized, Presidio County could not bring and maintain an action upon its demand against them until they were abolished by the Act of 1897, and the territory, which composed them, incorporated in Brewster County. It follows from what we have said that, as it was necessary for Presidio County to establish its demand by suit, and as it could not bring its action against Buchel and Foley counties while they existed as unorganized counties, and could only sue after they were abolished, the statute of limitations did not run against appellee until Buchel and Foley were abolished, and that the District Court of Brewster County had no jurisdiction of the suits brought therein (and afterwards dismissed) by Presidio County against Buchel and Foley. We have carefully examined all the grounds set out in the motion for rehearing, and concluded, upon mature deliberation, that none of them is well taken. The motion is overruled.

*Overruled.*

Writ of error refused.