CHICAGO, R. I. & G. RY. CO. v. JOHNSON.

(Court of Civil Appeals of Texas. Amarillo. March 22, 1913. Rehearing Denied April 19, 1913.)

1. LIMITATION OF ACTIONS (§ 32*)—DAMAGES TO LAND NOT TAKEN.

In trespass to try title to land occupied by a railroad, where the railroad by cross-action sought condemnation of the right of way, upon which issue alone the case was submitted, the statute of two or four years' limitation did not apply to the right of the owner to compensation for damages to the remainder of the land.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 143–145; Dec. Dig. § 32.*]

2. LICENSES (§ 44*) — RELATING TO REAL PROPERTY—DISTINGUISHED FROM EASEMENT.

The difference between a license and an easement is that a license is a personal privilege to do some act on the land without possessing any interest therein, while an easement is a permanent interest in the land; a license may be by parol, while an easement must be created by prescription or deed.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 97–99; Dec. Dig. § 44;* Easements, Cent. Dig. § 4.]

3. LICENSES (§§ 56, 62*)—RELATING TO REAL PROPERTY—REVOCATION.

A mere license relating to real property is revoked by a conveyance by either the licensor or licensee, and also by the death of the licensor.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 113–115, 125; Dec. Dig. §§ 56, 62.*]

4. FRAUDS, STATUTE OF (§ 129*)—INTEREST IN REAL PROPERTY—LICENSE.

While the statute of frauds prevents the creation by parol of an irrevocable license with respect to real property, yet, where there has been a parol license under a definite contract with performance on one side, such part performance takes the case out of the statute, and equity will recognize and enforce the licensee's rights in case of attempted revocation.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 311, 314, 318–320, 322, 325, 326; Dec. Dig. § 129.*]

5. RAILROADS (§ 64*)—RIGHT OF WAY—CONTRACT—CONSTRUCTION—PAYMENT.

Under a parol agreement between the owner and defendant railroad that its right of way could be located across his land if a switch was placed on the land, and that otherwise he should be paid $4 per acre, the railroad, without locating the switch or paying for the land, did not obtain any interest or title to the land in the nature of an easement, since payment was a condition precedent to its right.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 144, 147–152; Dec. Dig. § 64.*]

6. EMINENT DOMAIN (§ 280*) — ACTION FOR COMPENSATION — ESTOPPEL BY KNOWLEDGE OF OWNER.

Plaintiff, suing for damages for the value of a strip used by defendant as a railroad right of way and for damages to the remainder of the land, was not estopped by the fact that she ,and her deceased husband saw and knew that defendant was grading the road, expending money thereon, and operating its trains thereover, where defendant's entry on and improvement of the land were under a parol agreement for a consideration made by defendant's agent.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 776; Dec. Dig. § 280.*]

7. ADVERSE POSSESSION (§ 47*)—PRESUMPTION —POSSESSION OF OWNER.

There is a presumption at all times in favor of the true owner, and he is deemed by law to have possession coextensive with his title, unless actually ousted by the personal occupation of another, so that, whenever such occupation ceases, the title again draws to it the possession and restores the seisin of the owner, and a subsequent entry, even by the same wrongdoer and under the same claim of title, constitutes a new disseisin, from the date of which the statute takes a fresh start.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 234, 235; Dec. Dig. § 47.*]

8. ADVERSE POSSESSION (§ 96*)—EXTENT OF POSSESSION—ACTUAL POSSESSION.

When the real owner is in possession of land, one holding an inferior title is restricted to his actual possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 533–536; Dec. Dig. § 96.*]

9. ADVERSE POSSESSION (§ 60*)—REQUISITES —ASSERTION OF ADVERSE TITLE.

To establish title by limitation, the party setting up the limitation must show that he asserted an adverse title, so that one claiming only a right to be on the land as a licensee, and not a right to or in the land, is not holding adversely to the owner.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 282–312, 323, 328; Dec. Dig. § 60.*]

10. PUBLIC LANDS (§ 178*)—PURCHASE—FILING CONVEYANCE—PROPER DESCRIPTION.

Under Sayles' Ann. Civ. St. 1897, art. 4291, requiring the original purchaser of public land to forward his application properly describing the land, and article 4292 authorizing him to sell and the substitute purchaser to file his obligation with the Commissioner of the General Land Office, together with the duly authenticated conveyance or transfer from the original purchaser, a proper description in the substitute purchaser's affidavit, if required, was substantially complied with by application of the substitute purchaser, with the attached obligation describing the land correctly and including the county where it was located, so as to authorize the Commissioner to recognize him as a purchaser of the land, though the application itself omitted the county.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

11. TRIAL (§ 85*) — SUFFICIENCY OF OBJECTION—EVIDENCE ADMISSIBLE IN PART.

Where at least part of a certificate of the Land Commissioner was admissible, and defendant's objection thereto did not inform the court what part it claimed to be opinion and conclusion of the Commissioner or what part he was not authorized to certify, the court was not bound upon its own motion to pick out any particular part of it as being inadmissible.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 222, 223–225; Dec. Dig. § 85.*]

12. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—FACTS OTHERWISE ESTABLISHED.

Error, if any, in the admission of certificate by the Land Commissioner was harmless, where the record contained his unobjected to certificate to most of the facts set out in the certificate to which objection was made.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

13. TRESPASS TO TRY TITLE (§ 6*)—TITLE TO SUPPORT ACTION—POSSESSION.

Mere possession of land or possession by tenant will support a recovery in trespass to try title against a naked trespasser.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 5–9, 15, 16; Dec. Dig. § 6.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Trespass to try title by Alice Johnson against the Chicago, Rock Island & Gulf Railway Company, with alternative demand by defendant for a condemnation of a right of way. Judgment for plaintiff for damages to land from defendant's taking of a right of way, and defendant appeals. Affirmed.

Gustavus & Jackson, of Amarillo, and N. H. Lassiter and Robt. Harrison, both of Ft. Worth, for appellant. Veale & Davidson, of Amarillo, for appellee.

HUFF, C. J. The appellee, Alice Johnson, for herself and as survivor of the community estate of herself and her deceased husband, A. S. Johnson, sued the appellant, the Chicago, Rock Island & Gulf Railway Company to recover section 30, block HI, in Oldham county, containing 640 acres of land, in the form of an ordinary action of trespass to try title. The appellant disclaimed as to all of said section except 19.35 acres thereof, described by metes and bounds; and as to said strip appellant pleaded the general issue not guilty, two and four years' statute of limitation as to damages, and, by estoppel, substantially that the appellant's line of railway was surveyed and located in 1901 and 1902 by the Choctaw, Oklahoma & Texas Railway Company, a duly incorporated railway company of Texas, and that with the knowledge and consent of A. S. Johnson, deceased, thereafter entered upon the section of land described in appellant's petition and graded said line of railway and expended large sums of money in doing such work, which right of way, franchises, etc., appellant acquired September 23, 1903, for a valuable consideration, from the Choctaw, Oklahoma & Texas Railway Company, and took possession thereof, and has continued ever since to operate same, and that later, about 1908 and 1909, without objection from appellee, constructed its track upon said roadbed and extended the same from Amarillo,

to which point said line had been completed and put in operation across said section, and has since been operating its trains over same and using said lands and the right of way across same for railway purposes, and therefore appellee is estopped from claiming the land and from attempting to revoke the license and permission giving it the right to enter upon and use said land. Appellant also pleads the five-year statute of limitation as to said strip of land, under deed duly registered; further, if appellant is not entitled to said land under its pleas aforesaid, it then asks that said land be condemned in the suit for its right of way, in accordance with the statutes regarding the condemnation of lands for right of way purposes for railway companies, and the value thereof fixed in accordance with the law.

The appellee, by supplemental petition, asks, in case of condemnation of the land, that she have judgment for the value of the strip so taken and damages to the remainder of the section. The verdict and judgment were in favor of appellee for $232.20 for the strip of land so used for right of way and $930.97 damages to the rest of the land, from which judgment this appeal is taken. The case was submitted alone upon the issue of condemnation. The trial court instructed the jury, as a matter of law, that appellee held title to all of the land and should recover the same; that the strip should be condemned; and that the only question was the assessment of the damages by the jury.

[1] The appellant, under its first and second assignments of error, assails the charge of the court wherein the jury were authorized to award damages to the section of land at the date of trial, not included in the right of way strip. The proposition presented under these assignments is: "If there ever was a cause of action in favor of plaintiff (appellee) or her husband for damages to the remainder of the section of land, the statute of limitation had barred it before the filing of this suit." Appellant cites in support of its proposition the following authorities: Railway Co. v. Geiselman, 12 Tex. Civ. App. 123, 34 S. W. 658; Houston Waterworks Co. v. Kennedy, 70 Tex. 233, 8 S. W. 36; Lyles v. Railway Co., 73 Tex. 95, 11 S. W. 782; Railway Co. v. Chaffin, 60 Tex. 553. We do not think these authorities applicable to condemnation proceedings. Judge Stayton decided the Kennedy Case, supra, and one or two other cases cited by appellant.

In the case of the Texas Western Railway Company v. Cave, 80 Tex. 137, 15 S. W. 786, Judge Stayton, speaking for the court, said: "We do not see upon what theory it could be held that plaintiff is barred of his right to recover all damages he would be entitled to if the company had not occupied the land at all, and was seeking to condemn before entering. The land belongs to plaintiff, as the cross-bill admits, and will continue so to do until the company may pay the compensa-

tion awarded; and we see no reason why he should be held barred, by a former occupancy which in no way divested his title, from anything which goes to make up the compensation which the company must pay before it can lawfully use the right of way. It might as well be held that plaintiff was barred from recovering damages for the condemnation of the right of way itself, by reason of a former occupancy not sufficient to confer the right, as to hold that he is barred from recovering from injury to land not actually condemned, but made less valuable by the condemnation of the right of way, for the one element of damages as well as the other enters into the compensation to be paid for the taking, and neither can be barred so long as the land has not in some lawful manner been burdened with the easement. The damages awarded by the judgment are all prospective in character, the price for which the future burden is placed on the land; and a holding that a past unlawful occupancy, which gave no right to continue to occupy, would cut off the right of a landowner to damages based on every element entering into the measure of compensation for taking of land for a public use could find no justification in principle or authority. Such a holding could stand only on the theory that the wrongful possessor, who thereby has acquired no property in the thing possessed, should for his wrongdoing be placed in a more favorable position when he seeks to recover the right to possess than would the person who seeks lawfully to acquire the right to possess and use before he takes possession. The law offers no such rewards for wrongdoing." Railway Co. v. Ruby, 80 Tex. 172, 15 S. W. 1040; Railway Co. v. Kinkead, 60 S. W. 468-470. We do not think the statute of two or four years' limitation apply, and there was no error in the charge in that particular. The assignments are therefore overruled.

We also overrule the fourth and twelfth assignments of error, which present the question upon refusal by the court of special charge No. 3 and upon the insufficiency of the evidence to support appellee's right to damages.

The third, sixth, ninth, and tenth assignments will be considered together. The appellant requested special instructions Nos. 2 and 6, which the court refused. No. 2 is to the effect that the undisputed testimony shows that A. S. Johnson, husband of appellee, gave the Choctaw, Oklahoma & Texas Railway Company license and permission to enter upon the section and to survey and construct the roadbed on the right of way across the land, which right of way was sold to appellant by said Choctaw Railway Company, which it had completed at great expense, and that appellee could not revoke the same and recover the land. Special charge No. 6 is to the effect that if A. S. Johnson permitted said road to go upon the

land, lay out its line, expend money in grading same across said section in the construction of said road thereon, and that appellant has ever since operated its trains over said line of railway and claimed right to use the strip of land so constructed, appellee would be estopped and could not recover.

The deed from the Choctaw, Oklahoma & Texas Railway Company to appellant is dated September 15, 1903. The facts in this case show that the Choctaw, Oklahoma & Texas Railway Company, some time in 1903, graded the right of way across the land, and that no further work was done thereon until some time in 1909, which was after appellant purchased the property. In that year it laid the rails on the dump and began to operate trains over the road. The facts are not clear as to the exact time when the road was completed over the land. The record shows that A. S. Johnson died in April, 1909; whether before or after the work was finished on the grade and the rails placed thereon and the road in operation, the testimony does not show. It appears that one Dye was the right of way agent and stopped one night at Johnson's while engaged in that work and was at his house several times during his work in that part of the country. The testimony of one witness, Glasscock, is to the effect that both Johnson and Dye told him Dye was to pay Johnson $4 per acre for the land if a switch was not located on his land. This witness states no such switch was placed on the land, and there is no evidence that the $4 was ever paid, and there is no offer to do so in this case. Appellee and her husband, A. S. Johnson, were living on the land when the grading was done across it and while the work was in progress. There is no evidence that they objected to the work. They left the land in 1907, before the rails were laid, the road completed, or trains operated over it.

[2-4] It will be seen appellant requested the court to instruct the jury that the testimony was undisputed that Johnson gave appellant and its vendor a license to enter upon his land and to use his land as a right of way. While the term "license" is used in the cases cited by appellant and in a great number of reported cases, upon principle we think they can be supported only on the ground that what was called a license was something more than a mere license. In many cases the license is connected with the grant. In other cases there was not a mere license but an oral agreement to grant an easement, followed by permanent and substantial improvements made upon the faith of the agreement, which equity regards as part performance and thereby takes it out of the statute of frauds. The difference between an easement and a license is the former implies an interest in land and the other does not. An easement must be created by deed or prescription while a license may be by parol. An easement is a permanent interest in the land while a license is a personal privilege to do some act on the land without possessing any estate therein.

In Parsons v. Hunt, 98 Tex. 425, 84 S. W. 645, Judge Brown said: "The defendant in error claims that the consent and permission given by Rutherford for the landing and fastening of the ferry boat to the land of the latter on the Texas side of Red river vested in Hunt a continuing right which could not be revoked by Rutherford or by his vendee, Parsons. Conceding the effect claimed for the permission given, it follows that under article 624, Revised Statutes, of this state, the agreement was void because such a right could not be conveyed by parol agreement. * * * Whether the right acquired in the land by Rutherford be denominated an easement or a license, it cannot be conveyed except by writing. In 18 American & English Encyclopedia of Law it was said: 'While a license proper may be created orally, if that which is given is equivalent to an estate in the land, it is not strictly a license, and a writing sufficient to satisfy the statute of frauds is required.' Cook v. Stearns, 11 Mass. 537. In the case last cited, the court said: 'Licenses to do a particular act do not in any degree trench upon the policy of the law, which requires that bargains respecting the title or interest in real estate shall be by deed or in writing. They amount to nothing more than an excuse for the act, which otherwise would be a trespass. But a permanent right to hold another's land for a particular purpose, and to enter upon it at all times without his consent, is an important interest, which ought not to pass without writing, and is the very object provided for by our statute.' " T. & P. Ry. Co. v. Durrett, 57 Tex. 48; Toyaho Creek Irr. Co. v. Hutchins, 21 Tex. Civ. App. 280, 52 S. W. 101; Adams v. Weir, 99 S. W. 726; Hicks v. Swift Creek Mill Co., 133 Ala. 411, 31 South. 947, 57 L. R. A. 720, 91 Am. St. Rep. 38; Ewing v. Rhea, 37 Or. 583, 62 Pac. 790, 52 L. R. A. 140, 82 Am. St. Rep. 783; Lawrence v. Springer, 31 Am. St. Rep., for notes pp. 713, 715. A full discussion of the question is given in the notes.

If it was a mere license or permission, the death of the licensor, Johnson, would revoke it. The conveyance by either the licensee or licensor would revoke it; but, where the license is executed or coupled with an interest, it is held by some courts, and we take it our courts hold that it cannot be so revoked. The courts appear to be hopelessly in conflict upon this question. It is perhaps the rule by our courts that the statute of frauds prevents the creation of an irrevocable license by parol; but where there has been a parol license, under a definite contract with performance upon one side, the case is taken out of the statute by part performance, and

equity will recognize and enforce the licensee's rights in case of attempted revocation. T. & St. L. Ry. Co. v. Jarrell, 60 Tex. 267; Shepard v. Railway Co., 2 Tex. Civ. App. 535, 22 S. W. 267; Evans v. Railway Co., 9 Tex. Civ. App. 124, 28 S. W. 903.

[5] In this case the evidence and all the evidence upon that point is that Johnson agreed with the right of way agent, Dye, that the right of way could be placed across his land if a switch was placed upon his land. This was not done, nor is it offered to be done. If the switch was not placed on his land, then he must have $4 per acre. This is not shown to have been paid, nor is there any offer to pay. Then, what are the rights and equities of the parties in the case? This case illustrates the wisdom of the rule requiring the conveyance of an interest in land to be in writing. Johnson is dead; Dye is not produced; and a third party testified what he heard both parties say; whether they were together when he heard them say it or whether they told him separately, and at different times the record leaves to conjecture. One thing is evident, however. Johnson did not donate the right of way, and, if appellant and its assignor placed improvements thereon and expended money, they did so under an agreement through Dye to pay Johnson for his land. Until this agreement was complied with, they did not secure an interest in the land in the nature of an easement. If there was any permission given appellant to enter upon the land, it was under an agreement to pay for it. We think the title to this land did not vest in appellant until it paid for it. The contract is not set up nor an offer to perform it according to the terms agreed upon. Had such pleadings and offer been made, a question might have been made as to appellee's right to recover more than the $4 per acre for the land appropriated, but no such relief is sought. On the contrary, appellant seeks relief in condemnation proceedings under the laws of this state. If there was any license granted to enter upon the land, it was under an agreement, the terms of which appellant did not comply with, and hence no rights to the land save those which the law gave it under the right of eminent domain.

The case of Rio Grande & Eagle Pass Ry. Co. v. Ortiz, 75 Tex. 602, 12 S. W. 1129, sustains our position. The facts are substantially in that case that Ortiz first sued for damages against the railroad company appropriating his land for right of way, which judgment was not paid. Afterward that company sold to another, which went into the hands of a receiver. The claim was presented to the special master in chancery who disallowed the claim, and thereafter the road was purchased by the Rio Grande & Eagle Pass Railroad Company, which took over all the property, and suit was instituted against the road by Ortiz. Judge Gaines, in passing on that case, said: "But the company having already occupied the land without either the payment or assessment of any compensation, he had two methods of enforcing his right. The first was an action for the recovery of his land, which would have forced the company to take the statutory method for its condemnation; and the second was to bring a direct action to recover the damages for the appropriation of the land." Again he said: "The law gives the company, by reason of its franchises, the right to an easement over the land. It gives the owner right to his compensation in the event the company appropriates the land, and it makes the company's right to depend upon the precedent condition and that it first pay the compensation." Again: "We think, therefore, that the plaintiff, by obtaining his judgment against the Rio Grande Pecos Railway Company, which was never satisfied, parted neither with his title to the land nor with his right to demand compensation therefor from another company, which succeeded to the rights of the former and continued to use the property." Railway Co. v. Benitos, 59 Tex. 326. The reasoning in that case applies, we think, with force in this case. The appellee has not received compensation for the land so appropriated by appellant, and the fact that compensation was agreed upon, instead of having been reduced to a judgment, does not affect the rule that payment is a precedent condition of appellant's right to the land.

[6] Neither do we think that appellee is estopped by the fact that she and her husband saw and knew appellant and its vendor were grading the road, expending money thereon, and operating its trains over the road. We do not think, under the facts in this case, there was error in refusing the charge on estoppel. Railway Co. v. Hunnicutt, 18 Tex. Civ. App. 310, 44 S. W. 535; Railway Co. v. Kinkead, 60 S. W. 468; Railway Co. v. Donahoo, 59 Tex. 132; Railway Co. v. Pfeuffer, 56 Tex. 74.

The fifth assignment of error complains at the action of the court in refusing to give special charge No. 4 requested by appellant, submitting the issue of title under the five-year statute of limitation. The appellant claims under deed dated September 15, 1903, and recorded November 6, 1903, in Oldham county. The deed from the Choctaw Railway Company to appellant describes the property conveyed as: "All and singular its railroad extending from a point on the east line of the state of Texas at or near the town of Texola, in a westerly direction, through the counties of Wheeler, Gray, Donley, Carson, Deaf Smith and Oldham, to the west line of the state of Texas, together with all of its franchises, property rights and privileges of every kind and character, including all lands, right of way, roadbed, tracks," etc. The evidence of the payment of taxes is a statement from the tax collector that all taxes, including the year 1904, up to and in-

cluding the year 1910, on 37.26 acres, out of section 30, have been paid. The evidence shows that the grading of the right of way was commenced in the early part of 1903, and work was stopped thereon some time in July of that year, and nothing else was done on the grade until some time in 1909, when work was resumed. The ties were placed thereon and the trains operated over the road. The section of land was in the possession of Johnson up to the time he left in 1907 and by tenant until work was resumed on the grade. There was no segregation of the right of way from the rest of the section by fence or otherwise, but it was under Johnson's inclosure. No work of any kind was done on the grade, but it stood open and unused, and cattle and other animals could trespass freely on it. The suit was filed for the land the ———— day of ————, 1910.

[7] "At all times there is a presumption in favor of the true owner, and he is deemed by law to have possession coextensive with his title, unless actually ousted by the personal occupation of another; and so, too, whenever that occupation by another ceases, the title again draws to it the possession and the seisin of the owner is restored; and a subsequent entry, even by the same wrongdoer and under the same claim of title, constitutes a new disseisin from the date of which the statute takes a fresh start." Collier v. Couts, 92 Tex. 238, 239, 47 S. W. 527. Appellant shows by its testimony that there was no actual continuous possession or use by it of the strip of land from 1903 to 1909. If Johnson was ever in fact ousted from possession after appellant or its vendor vacated the premises, he (Johnson) was then not only in constructive but actual possession of the land until appellant again entered for the purpose of completing the work. Even if there was possession of the land, it may be doubted if the deed sufficiently describes the land such as would support the five-year statute. However, we do not decide this point. Ellis v. Le Bow, 30 Tex. Civ. App. 449, 71 S. W. 576.

[8] It is the well-recognized rule that, when the real owner is in possession of the land, the one holding an inferior title is restricted to his actual possession.

[9] In this case it appears appellant only claims as a licensee and therefore is not holding adverse to appellee's title. By so claiming it only claims a right to be on the land and not a right to or in the land. In order to establish title by limitation, the facts must show that appellant asserted title adverse to that of appellee. We think the court correctly refused to submit the issue of the five-year statute of limitation to the jury.

[10] The appellant assigns error on the action of the court in permitting the application of A. S. Johnson to purchase section 30, block HI, to be read in evidence, because the county where the land was situated is not given in the application and does not appear to be the same land sued for. The land appears to have been purchased from the state by one E. Paschal on the 27th day of June, 1901, who properly filed his application and obligation with the Land Commissioner. On the 27th day of January, 1902, Paschal, by quitclaim deed, conveyed the land to A. S. Johnson, and on that date Johnson made his affidavit to purchase the land, which in its body leaves a blank where the county should have been given. The obligation of Johnson attached to the affidavit describes the land properly as being situated in Oldham county. It will be noted that article 4291, Sayles' Statutes, requires the original purchaser to forward his application "particularly describing the land." Article 4292 authorizes the original purchaser to sell and that the substitute purchaser "may file his obligation with the Commissioner of the General Land Office, together with the duly authenticated conveyance, or transfer, from the original purchaser." In this article requirements of particular description in the substitute purchaser's affidavit is not a requirement; but, if such was the requirement, we think the application with the attached obligation, describing the land correctly, is a substantial compliance and was sufficient to authorize the Commissioner to recognize Johnson as a purchaser of the land. The following cases, while not directly in point, support the act of the Commissioner in so recognizing Johnson: Corrigan v. Fitzsimmons, 97 Tex. 595, 80 S. W. 989; Logan v. Currie, 95 Tex. 664, 69 S. W. 129.

[11] The eighth assignment is urged on the action of the court in admitting the certificate of the Land Commissioner reciting the sale of the land to Paschal; that field notes were filed; that Paschal conveyed to Johnson; that Johnson made proof of occupancy the payment of principal and interest, and that the section stood in the records of that office in the name of A. S. Johnson. The appellant objected to this certificate because it is not a certified statement of the contents of the records and but the conclusion of the Land Commissioner; is not best but secondary evidence; is not such certificate as the Land Commissioner is authorized to make; and is the conclusion of the Commissioner as to matters set out in said certificate. The Commissioner can certify to "facts contained in the papers, documents, or records" of his office. At least part of the certificate was admissible; just what part is claimed to be opinion and the conclusion of the Commissioner, and just what he was not authorized to make by certificate, appellant has not seen proper to inform us. We do not feel authorized, under the general exceptions to the certificate, to pick out any particular portion of it upon our own motion. On what the certificate may show, we cite Robles v. Cooksey, 70 S. W. 586; Brewster County v. Presidio County, 19 Tex. Civ. App. 638, 48 S. W. 213.

[12] We also find a certificate by the Commissioner in the record to most of the facts set out in the above certificate, to which no objection was made. If there was any error in the admission of the certificate objected to, it was harmless. It may be doubted whether appellant, under article 4472, Sayles' Statutes, can question appellee's title in the action to condemn the land. It is provided by that article: "But the plea for condemnation shall be an admission of the plaintiff's title to such property." Railway Co. v. Kinkead, 60 S. W. 468. In this case appellant holds its right under the Johnson title and seeks to condemn the land to its own use.

[13] Again, the appellee was in possession of the land by tenant. One in possession of land may recover against a naked trespasser. Railway Co. v. Ragsdale, 67 Tex. 24, 2 S. W. 515; Parker v. Railway, 71 Tex. 132, 8 S. W. 541.

The eleventh assignment is overruled for reasons set out under the first and second assignments of error.

We find no such error in this case as requires a reversal, and therefore affirm the judgment of the trial court.