## S. L. UNDERWOOD ET AL. v. VIRGINIA A. KING.

### No. 1942. Decided May 26, 1909.

**1.—Public Land—Purchase—Patent.**

A patent to land invests the patentee with title good against all persons who can not show a superior preexisting right. (P. 565.)

**2.—School Land—Undisclosed Vacancy—Survey—Inclosure—Improvements— Preferences in Purchase.**

Section 8 of the Act of April 15, 1905 (Laws, 29th Leg., pp. 164-166) on survey being made of unsurveyed vacant land, gives a preference right in the purchase of the same, not only to one who may have had same enclosed, but to one owning improvements thereon, and secures no preference to the former over the latter. (P. 566.)

**3.—Same.**

Survey of an undisclosed vacancy of 223 acres of land was procured by one residing and having improvements on 160 acres thereof which he had inclosed, and, it having been classified and appraised, he purchased the 223 acres and obtained patent. The land was also inclosed within a large pasture of another proprietor, who, after patent issued, and within ninety days after survey made allowed for purchase of the land by one having it inclosed, made application to purchase the entire tract and tendered to the patentee the expense incurred in having it surveyed. Held that such applicant had no preference over the owner of the improvements in the right to buy the 160 acres so improved, the latter's prior application and patent giving him the superior title, and that the application to buy the 223 acres as a whole, after it had been patented, gave no right to any of the land which would sustain a suit to recover it from the patentee. (P. 566.)

**4.—Patent—Collusion.**

Collusion and fraud in obtaining a patent was not available to one claiming adversely thereto who showed no right to the land. (P. 566.)

Vol. CII, Supreme—36.

. Error to the Court of Civil Appeals for the Second District, in an appeal from Jones County.

Mrs. King sued Underwood and others in trespass to try title, and appealed from a judgment for defendants. It was reversed and rendered in her favor, whereupon appellees obtained writ of error.

*Thomas L. Blanton, C. H. Steele* and *Theodore Mack,* for plaintiffs in error. *Thomas & Chapman* were also on brief in appellate court.—Plaintiff could only recover upon the strength of her own title and not upon supposed defects in defendant's title. Act of April 15, 1905, sec. 8, p. 166; Renner v. Peterson, 51 S. W., 868; Gracey v. Hendrix, 93 Texas, 26; Roberson v. Sterrett, 96 Texas, 180.

One seeking to avail himself of a preference right, must specifically comply with all conditions of same. Welhausen v. Terrell, 100 Texas, 150.

Before a plaintiff will be permitted to attack the validity of a patent issued to defendant, it must be affirmatively shown that plaintiff had a vested right in the land before issuance of patent. Pardue v. White, 21 Texas Civ. App., 121; Wurzbach v. Burkett, 60 S. W.; 590; Logan v. Curry, 95 Texas, 664; Frontroy v. Atkinson, 100 S. W., 1023; Carter v. Clifton, 98 S. W., 209.

Where a person has no vested right in land prior to the issuance of patent, or even where a person has equities in land before patent issues, which equities in order to result in vested rights, must be perfected by the owner thereof taking certain affirmative action within a given time, and such person fails to take such action, and thereafter patent issues, such person, in either case, can not question such patent for collusion, or because of any other defect. Logan v. Curry, 95 Texas, 664, and authorities cited above.

Where an applicant for public land is in sore need of the advice, counsel and assistance of an attorney, and such applicant is wholly without funds, and can not otherwise employ an attorney, he is not acting in collusion, in purchasing public land, by agreeing with an attorney that, as his fee, such applicant will convey to such attorney, when his title to said land is perfected, a certain portion of the land to be purchased by him.

Any person who owned improvements on vacant public domain not disclosed by the official maps in use at the General Land Office on February 23, 1900, had a 90 days preference right, under section 8 of the Act of 1905, to purchase as much as 160 acres of same. Act of April 15, 1905, sec. 8, p. 166.

The court did not err in rendering judgment for defendants, because the plaintiff not only failed to show that defendants' title was defective, but likewise failed to show that she had any rights whatever in the land.

Should the court differ with our contentions herein made, and be of the opinion that plaintiff in error did have a prior right, superior to defendants, then, since plaintiff by a judgment of reversal and rendition would be getting a good title to 223 acres of patented land without paying one cent to the State or to anyone else for same, he

should be forced to reimburse defendant, Thomas L. Blanton, in the amount of $801.12.

*Legett & Kirby* and *G. G. Ferrell,* for defendant in error.—One in whose enclosure was situated vacant public domain, which vacancy was not disclosed by the official maps in use in the General Land Office on February 23, 1900, had a prior right under the act of 1905, section 8, to purchase said land at any time within ninety days after said land was surveyed and the owner of the enclosure notified that the land had been classified and appraised by the Commissioner.

One desiring to purchase vacant public domain, situated within the enclosure of another, and not disclosed by the official maps in use in the Land Office on February 23, 1900, not being required to settle upon or improve said land as a condition precedent to its purchase, could not by settling upon, improving and enclosing said land, subsequent to the Act of 1905, defeat the prior rights of the owner of the enclosure fixed by section 8 of said Act of 1905.

A patent does not preclude equities of a third party existing prior to the issuance of the patent. Smith v. Power, 2 Texas, 72; Commissioner v. Smith, 5 Texas, 481; DeMontel v. Speed, 53 Texas, 342.

The issuance of a patent does not defeat the right of one seeking to purchase, where such rights exist prior to the issuance of the patent and are asserted in the manner and within the time prescribed by law. Same authorities.

Improvements on vacant public domain not disclosed by the official maps in use in the General Land Office on February 23, 1900, placed thereon subsequent to the passage of the Act of April 15, 1905, conferred no right of purchase as against one who had enclosed said vacant land prior to the passage of said Act of 1905. Act of April 15, 1905, sec. 8, p. 165, sec. 11, p. 166.

The rights of persons, situated as was plaintiff, were protected by section 11 of the Act of April 15, 1905, and all rights accruing under said Act prior to September 1, 1905, were authorized to be exercised thereafter the same as if no suspension of sales had occurred. Act of April 15, 1905, sec. 11, p. 166.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

Mrs. King brought this action in trespass to try title to recover of Underwood and others a tract of 223 acres of land in Jones County. The District Court decided against her, and its judgment was reversed by the Court of Civil Appeals and judgment rendered in her favor.

The conflict of claims of the parties arose in their efforts to buy the land from the State under section 8 of the law of 1905 (Laws 29th Leg., 165). The tract, prior to the incipiency of the controversy, was vacant land, the vacancy, however, not being disclosed by the maps in use in the Land Office on February 23, 1900. It appears that prior to 1892 W. D. Berryhill attempted to locate a pre-emption claim upon the land, and transferred his claim to M. J. Berryhill who is one of the defendants. The latter, in 1892, settled upon and improved it by building a house and putting about twenty acres in

cultivation. He lived upon and cultivated the land until 1896, when he left and remained away from it until September, 1905, when he resumed possession of and continued to occupy the house and the twenty acres originally improved by him. In February, 1906, he transferred his rights to S. L. Underwood, another of defendants. In September, 1905, the land was and, for about ten years prior thereto, had been included within a large enclosure constituting the pasture of Mrs. King, the plaintiff. About the middle of September, 1905, Underwood fenced all of it, except the twenty acres occupied by Berryhill, by an enclosure within Mrs. King's pasture, built a house and cleared about thirty acres for cultivation and has since lived thereon with his family. January 22, 1906, Underwood made application to the County Surveyor to have the entire tract surveyed and the survey was made and the field notes with the application therefor were filed in the Land Office February 14, 1906. It appears from the findings that the surveyor first valued the land at $5.00 per acre, but was induced by the attorney for Underwood to reduce the valuation to $2.50 per acre, and that this valuation was returned to the Land Office. The Commissioner, on April 23, 1906, notified Underwood that the field notes were approved, appraising the land at $3.50 per acre. April 27, 1906, Underwood made the proper application to purchase, which was received and accepted by the Commissioner April 30, 1906, and the land was awarded to the applicant. The required first payment was also made by him. May 11, 1906, Underwood conveyed the land by deed to Thomas L. Blanton, one of the defendants, who was Underwood's attorney in the proceedings looking to the acquisition of the land, which deed was properly recorded in Jones County and was filed in the General Land Office May 28, 1906. June 5, 1906, Blanton paid the entire purchase money to the State and, on June 12, received a patent for the land. June 15, 1906, Blanton conveyed to Underwood all of the land for a consideration of $20.62 cash and notes for $1,500. On June 16, 1906, Underwood conveyed to Mrs. Rissley 40 acres and to M. J. Berryhill 36 23-100 acres of the land. Both the district judge and the Court of Civil Appeals found that there was collusion in the making of the purchase by Underwood, in that there was a written contract between him, Berryhill and Blanton that a part of the land, when acquired, should be conveyed to Berryhill and another part to Blanton as his fee for procuring and defending the title.

In his report accompanying the field notes of the survey, the surveyor made no mention of Mrs. King's enclosure, but stated that the land was within the enclosure of Underwood; that improvements were owned by Underwood; that Underwood had bought improvements of M. J. Berryhill, and was in the exclusive possession of the entire 223 acres. It does not appear that any notice was given by the Commissioner to Mrs. King, but her agents otherwise received notice of the survey made for Underwood, and on July 2, 1906, she made her application and took the proper steps to exercise such preference as she had to purchase the entire tract, and made a sufficient tender to Underwood of the fees and expenses incurred by him in procuring the survey.

Upon these facts the question arises, whether or not by these proceedings Mrs. King acquired, under the provisions of the 8th section of the Act of 1905, such a right to the land as enables her to maintain this action of trespass to try title, and we are of the opinion that this question must be decided in the negative.

The section referred to directs the proceedings by which unsurveyed land set apart to the school fund may be purchased, consisting of an application for and a survey, the return of the field notes and the report of the surveyor together with the application to the General Land Office, the approval of the survey, appraisement of the land by the Commissioner and notice to the applicant. In ordinary cases the land may then be bought at the appraised value by the person who caused the survey to be made. But the statute contains this further provision:

"If any tract surveyed under this section as a vacancy should be wholly or partly within an enclosure or have improvements thereon, the surveyor shall, in addition to other requirements, give the name and post office address of the owner of the enclosure or enclosures or of the improvements thereon. Should the survey not be disclosed by the official maps in use in the Land Office on February 23, 1900, but should be recognized by the Commissioner as a vacancy, the owner of the enclosure or improvements shall be notified and given ninety days from the date of such notice to purchase that portion of the vacancy actually within his enclosure, and the owner of the improvements shall have the same preference to purchase not to exceed one hundred and sixty acres on which his improvements are situated and every such purchase shall be made upon the same terms as provided in this section for the sale of other land of similar character; provided, that if any other person than the owner of such enclosure or improvements shall have surveyed the vacancy at his own expense, then before the party shall exercise the preference right herein given, he shall reimburse the party having the land surveyed the reasonable fees and expenses incurred by him in surveying the said vacancy."

Under this provision it is not at all clear that, if there were no question of a preference given to Berryhill or Underwood, that given to Mrs. King was such that it would have been available, after the sale to Underwood and especially after the issuance of the patent, to enable Mrs. King to attack such sale and patent. An enclosure of the State's land does not, of itself, give to the person enclosing any right in or to the land; and it might well be contended that such a privilege as is here granted to the owner of an enclosure, must be made available in the manner and upon the conditions prescribed, or not at all, by having the surveyor give to the Commissioner the notice contemplated by the statute in order that the latter may follow the course prescribed; and that, if this is not done, the right given to buy in this way in preference to others is lost. But the facts are such as to make a decision of this question unnecessary to a disposition of the case.

The sale and the issuance of patent invested the defendants with title to the land which is good against all persons who can not show a superior pre-existing right to it. All that is claimed is that Mrs.

King had a right to buy in preference to the person who did buy. The statute is indefinite as to the time when the right it gives comes into existence; whether it refers to enclosures or improvements which were on the land at the time of its passage or to such as may be found to be there at the time of the survey. At the latter date the land was within the enclosure of both Mrs. King and Underwood. We shall assume, however, that if this had been all, Mrs. King, as the owner of an enclosure existing when Underwood commenced his preparations to acquire the land, would have been entitled to preference over him. Some light is thrown upon this question by the 5th section of the Act of 1900. (Laws 1st Called Session, 26th Leg., 32.)

But Berryhill had an improvement on the land during the whole of the time, which he assigned to Underwood, and the statute gives a preference to the owners of improvements as fully as it does to the owners of enclosures. It is only the existence of the improvement upon the land and not of any right in or to the land that is made the basis of the preference. The land belonged to the State and could have been recovered and sold with the improvements upon it, as it could have been recovered and sold regardless of Mrs. King's enclosure. But the Legislature chose to treat persons having enclosures or improvements as the owners thereof so far as to give them preference in purchasing; and it is therefore wholly immaterial that Berryhill had abandoned his claim to a pre-emption. The land still had the improvement on it of which he was the owner in the sense of the statute and this constituted the only fact required to give rise to a preference in his favor. So we have a case for which the statute makes no express provision, in which one person had the land enclosed and another had an improvement upon it. It is perfectly obvious that the statute does not prefer the owner of the enclosure to the owner of the improvement. The latter has the right, at least equal to that of the former, to buy one hundred and sixty acres. Underwood owned that right when he bought, and while he did not restrict his purchase to one hundred and sixty acres, he succeeded in getting an award and a patent to the entire tract. Mrs. King, to succeed in this action, must show a prior and superior title to the land. The most she can claim in any view is that she had a superior right to buy all over one hundred and sixty acres; but that is not a title to the land. She has never bought nor tried to buy the excess, but relies merely on a rejected application to purchase the whole. The Commissioner could not have sold that to her without disregarding Underwood's right, shown by the papers in his office, to buy one hundred and sixty acres. She fails to show any title to the land for which she sues.

The collusion between Underwood, Blanton and Berryhill, conceding that the understanding between them constituted collusion such as the statute refers to, was a wrong to the State and not to her. It in no way strengthens her claim of title. Logan v. Curry, 95 Texas, 664. We conclude that the judgment of the District Court was correct and that of the Court of Civil Appeals erroneous.—*Judgment of Court of Civil Appeals Reversed; Judgment of District Court Affirmed.*