### CHARLIE BROWN v. MAMIE BROWN ET AL.

Decided October 15, 1910.

**1.—School Land—Bond for Title—Illegal Contract.**

A contract of sale or bond to make title to school land after the period of occupancy required by law is complete, but executed during such period, to

one who is not and does not intend to become an actual occupant of the land, is in violation of the school land law of this State, and therefore a specific performance of the same will not be decreed although a valuable consideration has been paid.

## 2.—Same—Cases Distinguished.

Lovan v. Curry, 95 Texas, 664; Underwood v. King, 102 Texas, 561; Witcher v. Wiles, 33 Texas Civ. App., 69, distinguished.

Appeal from the District Court of Midland County. Tried below before Hon. S. J. Isaacks.

*A. S. Hawkins,* for appellant.—The court erred because the judgment rendered is contrary to the law and the evidence in this: That the undisputed evidence shows beyond question that Chas. Brown was entitled to an undivided one-half interest in the property in controversy in this case. Sullivan v. Fant, 110 S. W., 507; Mead v. Randolph, 8 Texas, 191, 196; Clark v. Haney, 62 Texas, 511, 514; Smith v. Eckford (Sup. Ct.), 18 S. W., 210, 212; Barbee v. Spivey, 32 S. W., 345, 346, 347; Diffie v. Thompson, 90 S. W., 193, 196; Whitfield v. Diffie, 105 S. W., 324, 325.

Collusion, if established (which is not admitted in this case, but denied), can not be raised by any one but the State, and especially by appellees in this case, as the party under whom they claim, Joe Brown, deceased, was a party to said collusion, if it existed. Logan v. Curry, 69 S. W., 129; Underwood v. King, 119 S. W., 298; Thompson v. Hubbard, 69 S. W., 649; May v. Hollingsworth, 80 S. W., 841; Perry v. Rutherford, 87 S. W., 1054.

A bond for title like the one in controversy herein, for "unlived out school land" is not contrary to public policy and can be enforced in Texas. Witcher v. Wiles, 75 S. W., 889; Johnson & Moran v. Buchanan, 116 S. W., 878.

*Jno. B. Howard* and *Graham B. Smedley,* for appellees.—A contract to become an actual settler upon State school land and to reside upon, occupy and improve the same for the use and benefit of another person in contravention of law, by statutes provided in such cases, is against public policy and void *ab initio* as to the contracting parties and their heirs. Sayles' Civ. Stats., art. 4218j; Glenn v. Mathews, 44 Texas, 405; Lewy v. Crawford, 23 S. W., 1044; Gray v. Freeman, 84 S. W., 1110; McCall v. Whaley, 115 S. W., 659; Teal v. Walker, 111 U. S., 242.

CONNER, CHIEF JUSTICE.—Appellant instituted this suit against Mamie Brown and her son, Joe Brown, Jr., and others not necessary to mention, by filing a petition, the first count of which was in the ordinary form of trespass to try title, to recover public school sections 6 and 8 in block 41, Midland County.

The second count set forth and sought a specific performance of the following contract:

"The State of Texas,
"County of Midland.

"Know all men by these presents that we, Joseph T. Brown as principal, and Z. T. Brown as surety, are held and firmly bound unto Charley Brown in the full and just sum of twenty-five hundred ($2500) dollars for the payment of all of which well and truly to be made we bind ourselves, our heirs, executors and administrators firmly by these presents.

"The condition of the foregoing obligation is as follows: Whereas the said Joseph T. Brown and Charley Brown are partners in a stock ranch located in Upton County, Texas, and are equally interested in said stock ranch and are equal partners and members of the firm of Brown Bros.; and whereas,

"The lands hereinafter described are to be appropriated to the uses and benefits of the said firm of Brown Bros. for a stock ranch, and the expenses of said stock ranch, including the interest and taxes and purchase money for said lands hereinafter described, are to be paid out of the funds of the said Brown Bros.; and whereas,

"For and in consideration of the foregoing premises, and in consideration of the said Charley Brown bearing one-half of the ranch expenses of the said firm of Brown Bros. and paying one-half of the expenses accrued and to accrue to the lands hereinafter described by reason of interest, taxes and principal due and to become due,

"The said Joseph T. Brown has bargained, sold, and agrees to convey on June 1, 1909, subject to the obligations of the original purchaser to the State of Texas for purchase money, an undivided one-half interest in and to the following described lands, towit:

| Section | Block | Certificate | Township | Grantee | County |
|---------|-------|-------------|----------|---------|--------|
| 2 | 42 | 4189 | 5 S | T. & P. Ry. Co. | Upton |
| 6 | 41 | 3478 | 5 S | T. & P. Ry. Co. | Upton |
| 8 | 41 | 3479 | 5 S | T. & P. Ry. Co. | Upton |
| 12 | 42 | 4194 | 5 S | T. & P. Ry. Co. | Upton |

"Now, therefore, if the said Charley Brown shall pay one-half of the expenses of the said lands above described, including principal, interest and taxes when due, continuously from this date to June 1, 1909, and shall in all things comply with the foregoing conditions of this bond, and if the said Joseph T. Brown shall on June 1, 1909, execute and deliver to the said Charley Brown his school land deed for an undivided one-half interest in and to the above described lands, subject to the obligations of the said original purchaser of said lands to the State of Texas for purchase money, then this obligation shall be null and void and of no further force and effect.

"Witness our hands this the 20th day of September, 1906.
      "(Signed) Joe T. Brown, principal.
         "Z. T. Brown, surety."

Upon the conclusion of the evidence the court gave to the jury a per-

emptory instruction in appellees' favor and judgment was entered accordingly.

The evidence is undisputed that sometime in June, 1906, Z. T. Brown owned a ranch containing among others the four sections of land in controversy in this suit, these sections having been about that time purchased by him from the State of Texas: that on the 19th day of September thereafter Z. T. Brown, joined by his wife, Sarah Brown, duly conveyed the four sections of land specified in the contract above set out to his son Joseph T. Brown, the husband of Mamie Brown, the father of the minor, Joseph Brown, Jr., and the brother of appellant, Charley Brown; that the recited consideration for this deed was $10 and "love and affection for our son Joseph"; that immediately thereafter Joseph T. Brown and his wife, Mamie, and child went upon the land in controversy and continued to occupy it as a home until the 6th day of July, 1907, upon which date Joseph Brown died. Appellee, Mamie Brown, with the child continued to occupy the premises as her home from thence forward until the three years occupancy required by the law had been completed. Z. T. Brown testified that his sons, Joe Brown and Charley Brown, were partners in the ranching business and that he gave the ranch to them. There was testimony to the effect that his purpose in executing the deed to Joe Brown and requiring the execution of the contract sued upon was to thereby vest in Charley Brown an equal interest with his brother, Joe, in the lands conveyed. Charley Brown testified to the effect that he and his brother were equally interested in the ranch; that the payments of interest, etc., upon the lands in controversy were paid out of partnership funds, as were also payments upon two or more sections that he himself later applied for and had awarded to him. He denied, however, that any agreement existed by virtue of which he in turn was to convey to Joe Brown or Mamie Brown an undivided one-half interest in the lands acquired by him. The evidence further shows that upon the making of the contract above set out, which was upon the day of the execution of the deed, it was delivered to Joe Brown for delivery to Charley Brown, but whether in fact it was ever delivered to Charley Brown by his brother Joe, the record fails to disclose. Mrs. Mamie Brown testified that sometime after her husband's death she found it among his private papers in a trunk and that upon application of Z. T. Brown therefor it was delivered to him and Z. T. Brown later delivered it to Charley Brown, who thereupon caused it to be recorded November 27, 1908, more than a year after the death of Joseph Brown.

Appellant in assigning error to the court's peremptory charge presents two contentions; first, that by virtue of the premises he had an equitable title to an undivided one-half interest in the lands sued for; or if not, that he was entitled to the specific performance of the contract sued upon. We think both contentions must be overruled. While ordinarily a bond for title, as appellant urges the contract to be, is such equitable title as in this State will authorize a recovery for lands, the only way by which title to school lands can be secured is by an original or substitute pur-

chase from the State accompanied with actual settlement and continued occupancy. It is not contended that appellant at any time ever settled upon or occupied the lands in controversy as his home. His occupancy, if any, was merely incidental to his business as a member of the ranching firm with his brother, and to give the contract the legal effect insisted upon is, we think, to violate the spirit, if not the letter, of our school land law. Joe Brown under the statute was authorized to accept the transfer and make settlement and occupancy of the lands in controversy, but his only standing or right was that of a substitute purchaser. As such he was required under the law to make not only the familiar affidavit of settlement and occupancy, but also to swear that he was buying the land for his home and that he was not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no person or corporation was interested in the purchase save himself. See Revised Statutes, article 4292. The contract, therefore, assuming it to have been delivered and to have been made for the purpose insisted upon by appellant, contemplated not only the acquisition of title by Charley Brown without the required settlement and occupancy, but also perjury on the part of his brother, Joe Brown, and falls within that class of contracts that the courts uniformly refuse to enforce. See Anderson v. Carkins, 135 U. S., 483 (34 L. Ed., 272), reversing the opinion by the Supreme Court of the State of Nebraska of contrary effect cited herein in behalf of appellant. See also Rogers v. Blackshear, 60 Texas Civ. App., —— (128 S. W., 938).

Appellant insists that no one but the State can raise the question of fraud, and that this court has upheld bonds for title, citing among others the leading cases of Logan v. Curry, 95 Texas, 664; Underwood v. King, 102 Texas, 561; Witcher v. Wiles, 33 Texas Civ. App., 69 (75 S. W., 889). We think the present case, however, distinguishable from those mentioned in that the bond for title upheld in Witcher v. Wiles, above referred to, was executed after and not, as here, at the time or before the title had vested in the party sought to be charged. Its performance required nothing inconsistent with the affidavits necessary to be made under the school land law; and the decision in Logan v. Curry we think is without application. In the case last referred to an independent party sought to destroy the title of Logan because of alleged collusion between Logan and his vendor, but here a party is seeking the aid of the courts to enforce a collusive contract which presents an altogether different question.

We conclude that the court properly instructed a verdict for appellees, and the judgment is accordingly affirmed.

*Affirmed.*

Writ of error refused.