HOLMAN v. PINKARD et al.　(No. 8163.)

(Court of Civil Appeals of Texas. Ft. Worth. April 17, 1915.)

Public Lands ⬤⇒173—Contract to Convey —Validity.

　A contract embodied in a bond for title whereby the obligor, whose vendor had been in possession of school lands for over a year, contracted to convey to the plaintiff, was a valid obligation, and defendant, who had taken a conveyance from the obligor, agreeing to perform the conditions of such bond, was liable to the plaintiff for the land, since the obligor had a vendible title; his vendor having complied with the prescribed period of occupancy.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. ⬤⇒173.]

Error from District Court, Comanche County; J. H. Arnold, Judge.

Action by Nat Holman against J. P. Pinkard and others. Judgment for defendants, and plaintiff brings error. Reversed, and cause remanded.

W. T. McPherson, of Comanche, and Ocie Speer, of Ft. Worth, for plaintiff in error. Callaway & Callaway, of Comanche, for defendants in error.

BUCK, J. This suit was instituted by plaintiff in error, Nat Holman, against J. P. Pinkard, G. M. Hamilton, and Chas. Downie, defendants in error, to recover six sections of land in Pecos county, alleging that said land was state school land, and on September 11, 1911, G. M. Hamilton, being the owner of said land, and lacking more than a year of completing the three years' occupancy required by the statute, executed a bond for title, binding himself to complete the occupancy and then convey said six sections in controversy to the plaintiff; that thereafter, on March 20, 1912, said Hamilton conveyed to J. P. Pinkard the land in question, and the latter assumed and agreed to perform the conditions of the bond made by said Hamilton to the plaintiff; and that said Pinkard had completed the occupancy and had been awarded by the land commissioner said land, together with two other sections mentioned and described, but he had failed and refused to convey to plaintiff the six sections mentioned in said bond, whereupon plaintiff pray-

ed for specific performance and in the alternative for damages in the sum of $5,000, being the amount mentioned in the bond.

The defendant Chas. Downie was discharged on his disclaimer, and defendant Hamilton, who had failed to answer, was dismissed, with costs. The defendant J. P. Pinkard answered, admitting the execution of the bond for title by Hamilton and the deed from Hamilton to himself, but alleged that the deed was executed as a part of the larger contract between himself and Nat Holman, which was entered into about the 10th day of October, 1911, partly in writing and partly in parol, by which Nat Holman, who was soon to be the owner of the eight sections of land described in the deed from Hamilton to himself, agreed to sell Pinkard the said eight sections in Pecos county with the understanding that Pinkard should go upon the land and complete the occupancy and prove up on the land and reconvey to Holman five of the tracts containing six sections, reserving to himself three tracts containing two sections. Defendant Pinkard further alleged that said Hamilton did not own nor claim any interest in the land at the time he made the deed to Pinkard, but was merely living on it for Holman as a hired hand, and that Holman had the land put in Hamilton's name and had the bond for title executed by Hamilton merely as a blind to cover up the real ownership of the land, which was in fact in Holman; that the bond for title was an illegal and fraudulent contract, and further that plaintiff had breached the contract in that he had failed to furnish to defendant Pinkard certain money for the payment of interest and taxes on the land, and to furnish him employment while on the land at certain stipulated wages, and had failed to furnish him some $300 in money, all of which he alleged to be a part of the consideration for the agreement on his part to carry out and fulfill the terms of the bond aforesaid. He asked that the case be dismissed, and, in the event the court held the contract illegal, he be allowed to recover the land in question.

The eight sections had been awarded to W. R. Harris in December, 1909, and on July 18, 1911, said Harris and wife conveyed to Hamilton all of said sections. On the same date Hamilton executed to the state of Texas his application as a substitute purchaser from the state, and the deed from Harris to him was filed in the county clerk's office in Pecos county, and after record was sent, together with substitute application, to and duly filed in the land office of the state of Texas, and said Hamilton was substituted as a substitute purchaser of said Harris. There was no question as to the regularity of any of the proceedings relating to the title of Harris, or as to his occupancy of the land, nor as to the sufficiency of his deed to Hamilton to convey title, nor of the deed from Hamilton

to Pinkard, except as the latter was limited by the obligation therein of said Pinkard to carry out the terms of the bond executed by Hamilton to Holman. The bond of title recites that:

"The said G. M. Hamilton is to have full and complete possession of said land, and is to exercise full and complete ownership of said land, so far as the use and occupancy of said land is concerned, and the only limitation on his said ownership is that he (the said G. M. Hamilton) shall not sell or incumber said land so as to interfere with his right and power to make title as hereinafter agreed. Now, after the said G. M. Hamilton shall well and truly occupy and reside upon said land as the law governing the purchase and sale of school land provides, from the date of settlement and sale of said land to W. R. Harris, the original purchaser from the state, and after full and complete proof of occupancy and improvements made and accepted by the General Land Office of the state of Texas, all of which shall be done at the time and as soon as the law governing such matters requires and permits, the said G. M. Hamilton shall make, or cause to be made, a good and sufficient deed to said above-described land, showing good and perfect title to said land, with no liens outstanding against said land, except the original obligation of the original purchaser from the state, to the said Nat Holman, or his assigns, then and in that event this obligation shall be null and void, and otherwise to remain in full force and effect."

The court, after the jury had been impaneled and sworn, and the plaintiff had introduced all his evidence in the case, and after the defendant J. P. Pinkard had introduced his evidence bearing on his defense that the contract sued upon was illegal and fraudulent, instructed the jury peremptorily to find for defendant, and thereupon rendered judgment for defendant Pinkard, from which judgment this writ of error is prosecuted.

W. R. Harris, having completed his first year's occupancy at the time of the deed by him to Hamilton, and having complied with the terms of the law with reference to said occupancy, had a vendible title in and to said lands; and Hamilton, his vendee, having qualified under the law as a substitute purchaser, and having been accepted as such by the general land office, acquired a vendible title. It certainly would not lie in the mouth of the subsequent vendee, Pinkard, who predicated the sufficiency of his title, and who based his claims before the land commissioner for the final award of these lands to him, upon the sufficiency of the title which he had acquired through Harris and Hamilton, to deny the validity of his vendor's title. He has relied on the legality and sufficiency of the title received by Hamilton from Harris, and conveyed to him by Hamilton, in proving up his title under which he claims, and in effect has vouched to the state the good faith and the sufficiency of the occupancy of his vendor, Hamilton; and now that the state has received his proofs of the compliance with the terms of the law by Harris and Hamilton as legal tender and has awarded him the land, acknowledging said proofs as part consideration, can he who receives the benefits derived therefrom deny the genuineness of the coin which theretofore he guaranteed to his state? We think not. If so, such solemn averments of truthfulness of facts upon which the award was sought and obtained would become

"Ambition's ladder,
Whereto the climber upward turns his face;
But when he once attains the upmost round,
He then unto the ladder turns his back,
Looks into the clouds, scorning the base degrees
By which he did ascend."

That an executory contract to convey land, held by an actual settler, and after one year's occupancy, is not inhibited by law, and is enforceable after the completion of the three years' occupancy, we think is beyond question. Witcher v. Wiles, 33 Tex. Civ. App. 69, 75 S. W. 889; Hudman v. Henderson, 124 S. W. 187. We do not construe the cases of Brown v. Brown, 132 S. W. 887, and Purington v. Brown, 133 S. W. 1080, cited by defendants in error, as holding to the contrary. In Brown v. Brown, the facts showed that A. T. Brown was the awardee of four sections of state school land, purchased in June, 1906. In September, 1906, he and his wife conveyed the land to his son, Joseph T. Brown, who immediately thereafter moved thereon with his family, and occupied it as his home till the date of his death, July 6, 1907. His widow and child continued to reside thereon until the three years required by law had been completed. The controversy arose between the widow and her brother-in-law, Charley Brown. September 20, 1906, Joseph T. Brown had executed an obligation to convey to his brother, Charley Brown, thereafter, on, to wit, June 1, 1909, a one-half undivided interest in and to the four sections, for certain recited considerations. Charley Brown sought to enforce the terms of this obligation. This court, speaking through Chief Justice Conner, in upholding the action of the trial court in peremptorily instructing the jury to find for the defendant, says:

"Appellant insists that no one but the state can raise the question of fraud, and that this court has upheld bonds for title, citing, among others, the leading cases of Logan v. Curry, 95 Tex. 664, 69 S. W. 129; Underwood v. King, 102 Tex. 561, 119 S. W. 298; Witcher v. Wiles, 33 Tex. Civ. App. 69, 75 S. W. 889. We think the present case, however, distinguishable from those mentioned, in that the bond for title upheld in Witcher v. Wiles, above referred to, was executed after, and not, as here, at the time or before the title had vested in the party sought to be charged. Its performance required nothing inconsistent with the affidavits necessary to be made under the school land law, and the decision in Logan v. Curry, we think, is without application. In the case last referred to, an independent party sought to destroy the title of Logan because of alleged collusion between Logan and his vendor, but here a party is seeking the aid of the courts to enforce a collusive contract, which presents an altogether different question."

The case of Purington v. Brown, supra, merely held, in so far as the questions therein decided are applicable to this discussion, that a verbal contract for sale of land was

unenforceable and obnoxious to the statute of frauds, unless it further was shown, not only that a full consideration had been paid for the land and permanent and valuable improvements made thereon, but that the purchaser took possession of the land. In so far as certain expressions in that case are relied on for authority to sustain the contention that an executory contract to convey state school land made subsequent to one year's occupancy is inhibited by law, and constitutes collusion and evidence of bad faith on the part of the obligor settler, it appears that such observations were not necessarily involved in the correct disposition of the case, and were therefore, as we think, not controlling, and not supported by the authority cited (Brown v. Brown, supra) in support thereof.

Since we believe that the trial court erred in peremptorily instructing the jury to find for defendant, and inasmuch as this error is properly raised by plaintiff in error in his brief, we conclude that the judgment of the trial court must be reversed.

Since there are some issues raised by the pleadings of the defendant Pinkard as to a partial failure of the consideration moving from plaintiff to him, and an alternative prayer that, in the event the court should hold legal the contract sued on, he should be granted certain specified relief, we do not feel that we are justified in rendering judgment for appellant, as prayed, but that the cause should be remanded for further proceedings in harmony with conclusions herein expressed.

Judgment reversed, and cause remanded.