## O'LOUGHLIN v. MORAN. (No. 1488.)

(Court of Civil Appeals of Texas. El Paso.
April 5, 1923. Rehearing Denied
May 3, 1923.)

**1. Public lands ⬅178(1)—Agreement by one who filed on land to divide land when proved up held void.**

An agreement between three persons, providing that one of them should file on public school land to be divided among the three when proved up, was void, and the trust thus attempted to be impressed on the title of settler was unenforceable as against settler or his vendee, being violative of the law regulating sale of public school land and contrary to the public policy of the state that such land should be sold only to actual bona fide settlers.

**2. Deeds ⬅70(8)—False representations to grantee, inducing execution of deed, ground for rescission, though grantee believed representations to be true.**

Where a widow owned a one-half interest in land by virtue of her community interest and was induced to join her son in the execution of a deed to a third person by false representations of the son and the grantee that she had no interest in the land, that the son and the grantee jointly owned the land as the result of a trade made by her husband, and that her signature was necessary to the conveyance by the son of his interest to the grantee, she was entitled to rescind the deed, the representations being constructively fraudulent, though the son and grantee believed them to be true.

**3. Evidence ⬅208(6), 263(4)—Allegations in original petition admissible against plaintiff in action tried on amended petition, but were subject to explanation.**

Where a case was tried on an amended petition, allegations contained in original petition were admissible against the plaintiff, but were not conclusive, and were subject to explanation or contradiction like other admissions against interest.

**4. Limitation of actions ⬅39(7)—Four-year statute of limitations applicable in action to rescind conveyance for fraud.**

In grantor's action to rescind conveyance on the ground of fraud, the four-year statute of limitations, described by Rev. St. art. 5690, was applicable.

**5. Limitation of actions ⬅100(3)—Period of limitations for rescission of conveyance for fraud began to run when fraud was discovered or should have been discovered.**

Where grantor was induced to execute deed by fraud, the period of limitations for commencement of action to rescind the conveyance began to run when the fraud was discovered, or by reasonable diligence should have been discovered.

**6. Limitation of actions ⬅199(2)—Whether grantor should have discovered fraud prior to such a date as would have barred the cause of action by limitations held for jury.**

In grantor's action to rescind conveyance on the ground of fraud, the question of wheth-

er grantor should have discovered the fraud prior to such a date as would have barred the cause of action *held* a question of fact for the jury.

**7. Cancellation of instruments ⬅37(4)— Grantor's offer in petition to do full equity held sufficient in action to rescind conveyance for fraud.**

In grantor's action to rescind conveyance on the ground of fraud, allegation in petition that plaintiff offered "to do full equity, such as may be required in the premises under the direction of this court," *held* sufficient as against the contention that plaintiff did not offer to return the money which had been expended for the land.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Action by Annie Moran and another against P. C. O'Loughlin. Judgment for named plaintiff, and defendant appeals. Affirmed.

W. P. Sebastian, of Breckenridge, and J. R. Stubblefield, of Eastland, for appellant.

H. L. McCune, of El Paso, and Grisham Bros. and Chastain, Judkins & Chastain, all of Eastland, for appellee.

### Statement of Case.

HIGGINS, J. By quitclaim deed dated March 30, 1903, filed for record February 12, 1911, D. A. Jones conveyed to Thos. Moran section 6 and the north one-half of section 4, both in block 5, S. P. R. R. survey in Stephens county, awarded to the grantor by the state on February 23, 1897. The recited consideration was $960, paid, and the assumption by the grantee of the balance ($39/_{40}$) of the purchase money due to the state.

Thos. Moran and appellee, Annie Moran, were husband and wife. They were married in 1866 and lived together as man and wife until the death of Thos. Moran, which occurred on April 30, 1912. W. J. Moran, the son of Thomas and Annie Moran, was the sole heir of the community estate of Thos. Moran.

By deed dated September 26, 1913, filed for record October 14, 1913, Annie and W. J. Moran conveyed to T. T. Downs the lands above described for a recited consideration of $2,000, paid, and the assumption by the grantee of the purchase money due the state, the same being $1 per acre, less $1/_{40}$ theretofore paid.

By deed dated October 1, 1913, filed for record December 8, 1913, Downs conveyed the land to O'Loughlin for a recited consideration of $2,250, paid, and the assumption by O'Loughlin of the indebtedness due the state.

On March 27, 1920, Annie and W. J. Moran filed this suit against O'Loughlin for rescission of their conveyance and recovery of an undivided one-half interest in the land.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

In the petition it was alleged that on September 26, 1913, W. J. Moran was the owner of an undivided one-half interest in said land; that for many years prior to said date he and O'Loughlin jointly owned the land under an agreement and trust relationship amounting to a partnership in the land, and W. J. Moran had implicit confidence in O'Loughlin; that W. J. Moran, many years prior to the date mentioned. moved from Stephens county to Midland county and thereafter had no information as to conditions in Stephens county affecting the land, but that defendant was fully advised in the premises; that upon said date defendant came to Midland and offered to buy W. J. Moran's interest in the land, whereupon Moran informed him that he was unacquainted with land values and conditions in Stephens county and would have to rely upon the information and advice of defendant respecting the same; whereupon defendant stated that the land had no value except a nominal value for grazing purposes, and, upon inquiry by W. J. Moran, defendant represented that there was no mineral activity or prospect of mineral development in that section of Stephens county and no market whatever for said land for mineral purposes or any other purpose except for grazing; that defendant then offered W. J. Moran $1,000 for his interest in the land; whereupon W. J. Moran advised defendant that, relying upon his representations and the confidential relationship theretofore existing between them, he would agree to sell him his interest in the land for said sum, and thereupon the conveyance was made to T. T. Downs, as an accommodation to the defendant, and thereafter Downs conveyed to defendant; that in the latter part of 1918 W. J. Moran learned of the falsity of defendant's representations concerning mineral activity and development for oil and gas in the vicinity of the land in Stephens county, and that the land at that time was very valuable on account of such activity, which defendant well knew; and that defendant had made such false representations fraudulently and with the intent to deceive, mislead, and overreach said plaintiff; and that said plaintiff was deceived and misled and overreached thereby and was thereby caused to execute and to request and advise his mother, the plaintiff, Annie Moran, to execute said deed, which they would not have done, but for such false and fraudulent representations.

The petition then avers:

"Plaintiffs show to the court that the plaintiff, Annie Moran, in fact had no interest in said land, but joined in the execution of the deed aforesaid to the defendant for the reason that her deceased husband, prior to and at the time of his death, held the title to said lands, as an accommodation to plaintiff, W. J. Moran, and defendant."

The petition tendered payment of $1,000 with interest and for judgment

"canceling said deed and holding the same for naught and reinvesting in plaintiff and restoring to him all of the right, title, and interest which he had in and to said lands on and before the date of said deed, for costs of court and for such other relief, general and special, as he may be entitled to in law and in equity."

On March 24, 1921, Annie Moran filed her first amended petition which differs in no material respect from her second amended petition filed May 17, 1921, and upon which the cause was tried.

In her second amended petition Annie Moran alleged, in substance, the following: That on September 26, 1913, she owned in fee simple an undivided one-half interest in said land, which land was state school land and that the same was community property of herself and her deceased husband, Thomas Moran; that O'Loughlin and her son, W. J. Moran, had her confidence and that she was old and credulous, and upon said date O'Loughlin came to Midland, where she resided, and represented to her that long prior thereto he had made a valid trade for said land with one of the owners thereof prior to its purchase by Thomas Moran, and by reason thereof he was entitled to and, in fact, owned one-half of the land and W. J. Moran owned the other half; that W. J. Moran acting with O'Loughlin made the same representations, which she believed and relied upon to be true, and was thereby induced to sign the conveyance without any consideration whatever for her interest; that O'Loughlin and the notary explained to her that it was necessary for her to join with W. J. Moran in the conveyance as the record title to one-half of the land appeared in her, but, in truth and in fact, belonged to O'Loughlin; that such representations with reference to prior negotiations of the defendant with the antecedent owners of the land, whereby he was entitled to the same, were false and known to be false by defendant; that, while the deed recited a consideration of $2,000, in fact only $1,000 was paid, and that W. J. Moran and plaintiff received nothing; that the conveyance to Downs instead of O'Loughlin was a subterfuge; that plaintiff was wholly ignorant of any trades or negotiations made by her husband or by any of his grantors with reference to the land in controversy, and, when the parties represented to plaintiff that there had been such antecedent deals which entitled the defendant to the conveyance, she believed said representations and acted upon the same, and parted with the premises without any consideration; that she did not discover the facts in the premises until about March 1, 1921.

On May 17, 1921, W. J. Moran filed a dismissal of his suit.

O'Loughlin answered by a general denial, set up the two, four, three and five years' statutes of limitation and stale demand.

The venue was changed to Eastland county by agreement.

Upon trial before a jury, the case was submitted upon special issues. The jury found that the representations, were made by the defendant as alleged; that Mrs. Moran relied upon same and was thereby induced to execute the deed; and that such representations were false. The issue of limitation under the four-year statute was also submitted and found in plaintiff's favor.

No error is assigned to the form in which any of the issues were submitted or to the instructions given in connection therewith.

Judgment was rendered in Mrs. Moran's favor for rescission as to an undivided one-half interest in the land, from which O'Loughlin appeals.

Under the first assignment, complaint is made of the refusal of a peremptory instruction to find for the defendant, which it is asserted should have been given for the following reasons: First, because plaintiff did not offer to return to the defendant the money which he had expended for the land; second, because the evidence failed to show that the representations made by defendant were false; third, because the cause of action was barred by the four years statute of limitation; fourth, because the plaintiff's claim was a stale demand.

The third assignment and proposition is that—

"the plaintiff is not entitled to recover the land in controversy, because the uncontradicted evidence in the case shows that Thomas Moran held the title to the land in controversy for the use of P. C. O'Loughlin and W. J. Moran, and the evidence further discloses that the defendant held title from the surviving wife of Thos. Moran and the only surviving heir of Thomas Moran."

The foregoing propositions embrace all of the contentions made by appellant.

The evidence is undisputed and in substance is as follows:

W. J. Moran testified that about February, 1897, he lived in Stephens county and discovered that the land in question was coming upon the market and told O'Loughlin of this fact and suggested that defendant file on the land and they would divide it equally. Defendant said he did not want to file on the land, but knew a man whom he could get to do so for them, naming Dave Jones. Defendant took him to Jones' house where defendant explained the proposition to Jones and made arrangements for Jones to file on the land for them; Jones to receive one section and O'Loughlin and witness to receive the other section and one-half when proved up. Witness had the application blanks with him, and Jones signed up the papers, witness acting as notary in swearing him; that the

land was awarded to Jones who lived it out and made proof of occupancy. Since then defendant has always claimed an interest in the land by virtue of the facts indicated; that defendant came to Midland, September 26, 1913, and offered to buy the portion thereof in controversy, and the deed was executed, witness receiving $1,000 for his interest in the land; that O'Loughlin explained to his mother that by reason of a trade made many years before she had lost her interest and that it belonged to him: that O'Loughlin requested witness to explain to his mother, and witness did explain to her in O'Loughlin's presence at his mother's house on the date the deed was procured, that defendant and witness had made a trade many years before the death of Thos. Moran by reason of which the land became the property of witness and defendant, and that she did not really have and never did have any interest in the land; that they told her she was not to get anything, as she had no interest, and her signature was simply a matter of form; that the defendant represented to his mother that he had made a deal with Dave Jones or some one who had held the land prior to the time she inherited same, and by reason thereof he was entitled to the land: that witness and defendant both represented to Mrs. Moran that the land belonged to them by reason of prior negotiations, and she was simply signing the deed as a matter of form; that they did not go into details with her about the trade which they had made with Jones; that, in fact, $1,000 only was paid by defendant for the land which represented the consideration for the one-half interest of witness; that the first time he advised his mother of her rights in the premises was in March, 1921, after he was advised of her legal rights by an attorney in the case; that his mother never received any consideration for the conveyance.

Mrs. Moran, plaintiff, testified that she was born in January, 1845, and had resided in Midland county since 1903, to which place she moved from Stephens county and had been in feeble health for the past fifteen years; that she signed the deed upon the representations made to her by O'Loughlin that he was buying her son's one-half interest in the land giving him $1,000 therefor; that many years before he and her son had made a trade, and defendant already owned one-half of the land which was in her husband's name and that he and her son wanted her to sign the deed to help them make the trade and that her son told her the same thing; that she told them that if she could help them to make the deal she would gladly sign the paper; that neither her son nor O'Loughlin represented that O'Loughlin had purchased his interest from Jones or any one else and did not tell her who they bought it from or when they bought it, but just said that they made a trade many years before

and had each owned a half interest in the land; that they explained to her that she had no interest in it, and she was paid nothing by defendant for her interest; that Mr. O'-Loughlin was an old friend and she believed what he and her son said about the matter and that she executed the deed believing that the representations they made were true; that she did not discover the facts until March 1, 1921, upon the advice of an attorney.

By the testimony of Downs it was shown that he took the conveyance of the land in trust for defendant. The defendant also testified that the conveyance to Downs was in trust for him. Defendant also testified that he had been using the land for grazing purposes since it was taken up from the state, paying taxes thereon; that it was his pasture, and Thomas Moran had never been in possession of it. He also testified:

"I know the old lady, Annie Moran. As to what conversation occurred when I talked this over with Moran and the old lady, Moran and I owned this land, he half and I the other half, and I was wanting to get a deed to my half from Moran, and he would not give it. He owned half and I owned half. Moran had written me before that. I told him I would buy his half, when he would not give me a deed to half of it. The land was between Will and myself, but I only made the remark that I would buy it, that was all my conversation to her. I went and saw her. I took dinner there. * * * Referring to this transaction with W. J. Moran and Annie Moran, I did not make any false representations in that transaction."

## Opinion.

The propositions which challenge the merits of the plaintiff's suit are the second and last above mentioned. These proceed upon the theory that Thomas Moran held the title in trust for W. J. Moran and O'Loughlin, and therefore the representations set up by Mrs. Moran were not false, for which reason her cause of action fails.

The deed from Jones to Thos. Moran vested in the latter the grantor's title to the land subject only to the lien of the state for the unpaid purchase money. There is no evidence that Thos. Moran acquired the land under an express agreement to hold the same in trust for W. J. Moran and O'Loughlin. There is no evidence even that Thos. Moran acquired the land with notice of the agreement made by Dave Jones to acquire the land in trust for W. J. Moran and O'Loughlin. The contention cannot be sustained upon the theory that by express agreement Thos. Moran agreed to hold the land in trust.

[1] The most favorable aspect which appellant can occupy in this respect is that by virtue of the quitclaim character of the Jones deed Thos. Moran acquired the title subject to the trust agreement made between Jones, W. J. Moran, and O'Loughlin. The agree-

ment between these last-named parties was in violation of the law regulating the sale of the public school land and contrary to the public policy of the state that such land should be sold only to actual bona fide settlers. The trust thus attempted to be impressed upon the title of Jones was illegal and unenforceable even as against Jones. 1 Perry on Trusts, § 21. Eastham v. Roundtree, 56 Tex. 110; Smith v. Boquet, 27 Tex. 507.

[2] If it could not be enforced against Jones, neither could it be done against his vendee. Scarborough v. Blount, 154 S. W. 313. Thos. Moran, by his deed from Jones, therefore acquired a good title to the land, one-half of which was owned by the plaintiff by virtue of her community interest. Therefore the representations made to her by her son and the defendant that they owned the land, that she, in fact, had no interest therein and her signature to the conveyance was a mere matter of form, was essentially false. Being false, material, and having been believed and relied upon by Mrs. Moran they were constructively fraudulent, even if W. J. Moran and O'Loughlin believed them to be true. 1 Black on Rescission, § 106; Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700; Boles v. Aldridge, 107 Tex. 209, 175 S. W. 1052.

[3] In this connection, also, appellant relies upon certain allegations contained in the first original petition which was offered in evidence against Mrs. Moran. While these allegations were admissible against her they were not conclusive but were subject to explanation or contradiction like other admissions against interest. Ry. Co. v. De Walt, 96 Tex. 121, 70 S. W. 531, 97 Am. St. Rep. 877.

In support of the contention that the land was impressed with a valid trust by virtue of the agreement with Jones, the appellant cites Logan v. Curry, 95 Tex. 664, 69 S. W. 129; Underwood v. King, 102 Tex. 566, 119 S. W. 298; and Mitchell v. Robison, 103 Tex. 642, 132 S. W. 465. These cases have no application. They cannot be construed as authority for the proposition that the collusive agreement between Jones, W. J. Moran and O'Loughlin could be the basis of a valid and enforceable trust estate in the land in favor of W. J. Moran and O'Loughlin.

[4] The proposition relating to the issue of stale demand has no application. The statute of limitation applies (Chamberlain v. Boon, 74 Tex. 659, 12 S. W. 727), and the four years' statute, art. 5690, R. S., governs in cases of this character. Groesbeck v. Crow, 91 Tex. 74, 40 S. W. 1028; Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39.

[5] The action being based upon fraud the statute began to run when the fraud was discovered or by reasonable diligence should

have been discovered. Ry. Co. v. Titterington, supra. Lastovica v. Sulik (Tex. Civ. App.) 33 S. W. 909; Martinez v. Gutierrez's Heirs (Tex. Civ. App.) 172 S. W. 766.

[6] The issue of limitation was submitted to the jury, and no objection is urged to the form in which it was submitted. According to the evidence, Mrs. Moran did not learn of the falsity of the representations made to her until March, 1921. Under the facts presented by this record, it was an issue of fact whether she should have discovered the fraud prior to such a date as would have barred the cause of action set up in her first amended petition. A peremptory instruction against her upon that issue would have been improper.

[7] The remaining proposition is that the defendant's requested peremptory instruction should have been given, because the plaintiff did not offer to return the money which he had expended for the land.

In reply to this it is sufficient to say that the plaintiff in her petition offered "to do full equity, such as may be required in the premises under the direction of this court." This was sufficient. It then became the duty of the court to render the proper decree. Pearson v. Cox, 71 Tex. 246, 9 S. W. 124, 10 Am. St. Rep. 740; Wells v. Houston, 23 Tex. Civ. App. 629, 57 S. W. 584; Cecil v. Henry (Tex. Civ. App.) 93 S. W. 216.

There is no assignment complaining of any defect in this respect in the decree entered by the court.

The foregoing views disposed of all questions presented.

Affirmed.